Arthur GARDINER, Petitioner,

v.

UNITED STATES of America, Respondent.

Civ. No. 87–0168–B.

United States District Court, D. Maine.

Feb. 25, 1988.

Richard S. Cohen, U.S. Atty., Jay P. McCloskey, Asst. U.S. Atty., Bangor, Me., for petitioner.

Richard Violette, Brewer, Me., Jay Sweet, Lewiston, Me., for respondent.

## MEMORANDUM OF DECISION AND ORDER VACATING SENTENCE

GENE CARTER, District Judge.

On April 8, 1985 Petitioner pled guilty to one count of cocaine distribution in violation of 21 U.S.C. § 841(a)(1) (1982). On July 3, 1985 he was sentenced to a twelve-year prison term. Acting *pro se*, Petitioner challenged his sentence by a motion under 28 U.S.C. § 2255, which was dismissed in part by this Court's order of July 27, 1987. In that motion Petitioner argued *inter alia*, that the failure of his court-appointed attorney, Richard D. Violette, Jr., to perfect his appeal had denied him effective assistance of counsel and had prejudiced him (1) by denying him the opportunity to question the disparity between his sentence and that of his codefendant; (2) by denying him the opportunity to challenge the legality of his sentence; and (3) by preventing him from requesting a sentence reduction under Rule 35 of the Federal Rules of Criminal Procedure.

In its order on Petitioner's motion, the Court found no merit in Petitioner's Rule 35 argument[1] because "Petitioner does not allege, and makes no showing, that he requested his attorney to file a Rule 35 motion and that his attorney failed to do so." *United States v. Gardiner,* 666 F.Supp. 267, at 272 (D.Me.1987). Since the record was not sufficient, on the Court's preliminary review, for the Court to determine accurately the precise contours of the claims Petitioner would raise on the prior appeal, if perfected, the Court ordered Petitioner "to supplement the record with information sufficient to allow the Court to determine the legal and factual basis of [his] claim" that he was denied effective assistance of counsel. *Id.* at 274. The Court also ordered appointment of counsel. *Id.*

Petitioner, by his counsel, seeks leave to amend his *pro se* petition to assert ineffec-tive assistance of counsel at the time of sentencing and to reassert his claim with respect to counsel's failure to seek review pursuant to Rule 35. Respondent does not object to such amendment, and the Court will permit it.

Petitioner's first argument is that his sentence is invalid because he was denied the effective assistance of counsel at the time of sentencing. Specifically, he asserts that he was disserved by counsel because Mr. Violette failed to speak on his behalf at the sentencing hearing either to set forth mitigating circumstances or to correct mis-statements allegedly made in the presen-tence report and in the Government's sen-tencing presentation.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court held that relief for inef-fective assistance of counsel will only be available if counsel's representation fell be-low an objective standard of reasonable-ness and there is a reasonable probability that, but for counsel's unprofessional er-rors, the result of the proceeding would have been different. The Court in *Strick-land* pointed out, however, that in certain sixth amendment contexts, including actual or constructive denial of the assistance of counsel altogether, prejudice is presumed. *Id.* at 692, 104 S.Ct. at 2067 (citing *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984)).

The Court elaborated on the meaning of the constitutional guarantee of the effec-tive assistance of counsel in *Cronic:*

The substance of the Constitution's guar-antee of the effective assistance of coun-sel is illuminated by reference to its un-derlying purpose. "[T]ruth," Lord Eldon said, "is best discovered by powerful statements on both sides of the ques-tion." This dictum describes the unique strength of our system of criminal jus-tice.... Thus, the adversarial process protected by the Sixth Amendment re-ligently.

---

1. The Court also dismissed Petitioner's argu-ment that his plea of guilty was entered unintel-

quires that the accused have "counsel acting in the role of an advocate." *Cronic*, 466 U.S. at 655–56, 104 S.Ct. at 2044–45. The Court was clearly describing the criticality of a true adversary relationship to the truth-finding process at trial. Although the sentencing process is not, at least in this jurisdiction, an adversary process in the same sense, the right to effective assistance of counsel extends to sentencing, which has been termed a critical stage in the criminal prosecution for constitutional purposes. *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 256, 19 L.Ed.2d 336 (1967). In determining that counsel is required at the time of sentencing, the Court in *Mempa* explained that even where the judge could only make a recommendation as to the amount of time a defendant should serve, "the necessity for the aid of counsel in marshaling the facts, introducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case as to sentence is apparent." *Id.* at 135, 88 S.Ct. at 257.

In this case the record demonstrates that Attorney Violette, despite the repeated inquiries of the Court, did not speak on his client's behalf at sentencing. Violette stated at the hearing that he had nothing to add to the Government's presentation and the presentence report and that he had considered arguments that might be made in his client's favor and had decided not to make them "in the best interests of my client." Transcript at 8. In a letter to

Petitioner's current counsel, a part of the record herein, Mr. Violette asserted that he did not make any argument on behalf of Petitioner because he perceived the Court to be angry at arguments made on behalf of Petitioner's codefendant,[2] his own client "as far as [he] could see . . . had absolutely no socially redeeming qualities," and therefore, with his client's concurrence, he "did not present any arguments in his behalf as any such arguments would only have the tendency to inflame Judge Carter to an even greater degree."

Neither the record, *see* Appendix A, Transcript, Sentencing Proceeding of Delores Rollins, Criminal No. 85–00016–P, nor the Court's memory supports Mr. Violette's characterization of Delores Rollins' sentencing proceeding or his purported inference that the Court would be further "inflamed" by a sentencing presentation on behalf of a different defendant.[3] Thus, Violette's portrayal of his decision not to speak at sentencing as a strategic decision is at best labored and the result of a gross misperception and, at worst, fabricated out of thin air.

The Court recognizes the well-established principle that it must, in examining a claim of ineffective assistance of counsel, be highly deferential to the strategic choices of counsel. *See Strickland*, 466 U.S. at 689–90, 104 S.Ct. at 2065. Even assuming that Mr. Violette's decision not to speak on his client's behalf at sentencing

---

2. The letter states:
    Just prior to Mr. Gardiner's sentencing, his co-defendant and sister, Delores Rollins, was sentenced for her involvement in the same crime. Although Ms. Rollins had no criminal record, each time her attorney, Paul Chaiken, tried to make an argument in her behalf, Judge Carter cut him off, expressed his disbelief in Ms. Rollins' testimony and his opinion that nothing that Mr. Chaiken could say could excuse Ms. Rollins' behavior. Following that dialogue, Judge Carter imposed a sentence on Ms. Rollins which shocked both Mr. Chaiken and myself.
    Exhibit "A" to Affidavit of Attorney Steven D. Silin, at 1.

3. Also, the record belies Mr. Violette's assertion that the decision not to inflame the judge by speaking on Defendant's behalf was concurred

in by Defendant. In response to the Court's question whether he was acting on instructions of his client in not addressing the matter of a proper sentence, Mr. Violette replied, "We have discussed the matter." When the Court then asked whether Petitioner had instructed Violette not to address sentence, Violette answered, "No, he has not, Your Honor." Sentencing Transcript at 7–8. Violette later stated that he believed it was in his client's best interests not to speak. These responses make clear that the decision was that of counsel and not of Petitioner. Petitioner's affidavit states "that Mr. Violette told me not to say anything at sentencing and to 'leave alone' what was on the record. He also informed me that he was not going to address the Court or to otherwise speak on my behalf at that time." Affidavit of Arthur Gardiner, ¶ 5.

was such a choice, the Court need not defer in cases such as this one where the decision in effect deprives a defendant of counsel at a critical stage of the proceeding.

The presentence report and Government presentation on sentencing in this matter provided a very bleak picture of a defendant who seemed to be, as the Court stated at sentencing, "an amoral, antisocial individual, who has no regard for the rights or the welfare of other people or of society in general." By declining to speak at sentencing, or to do anything else on his client's behalf, counsel assured that this was the impression with which the Court would be left. Counsel did not make a powerful, or even a weak, statement on the other side of the issue, and he did not "act[ ] in the role of an advocate for the defendant." *Cronic*, 466 U.S. at 656, 104 S.Ct. at 2045. Specifically, by not addressing the issue of an appropriate sentence, Attorney Violette gave up the opportunity to marshal salient facts in the presentence report and to present any mitigating circumstances surrounding Petitioner's conduct, both of which were considered by the Supreme Court in *Mempa v. Rhay*, 389 U.S. at 128, 88 S.Ct. at 254, to be important functions of counsel at sentencing. Thus, he did not fulfill in any respect the function

of counsel, and in fact, Petitioner, who had desired counsel to represent him, could have done as well without counsel [4] as with him present.

By describing the actions counsel might have taken, the Court does not suggest that counsel must perform in any specified manner; he is obviously free to choose among a variety of different approaches. For example, as the Government has suggested, he may reasonably choose not to put on evidence of mitigating circumstances, *Dobbs v. Kemp*, 790 F.2d 1499, 1913–14 (11th Cir.1986),[5] or decide not to ask others to speak or write on his defendant's behalf. *Mulligan v. Kemp*, 771 F.2d 1436, 1444 (11th Cir.1985). He may not, however, choose to do nothing at all, for to do so is a total abdication of the role of counsel.[6]

In *Blake v. Kemp*, 758 F.2d 523, 533–34 (11th Cir.1985), the Court of Appeals for the Eleventh Circuit addressed the issue, "agree[ing] with the district court that a presumption of prejudice would be proper where counsel's representation was so deficient as to amount in every respect to no representation at all." Although it did not find such a presumption, the Court did consider the question "very close" on the facts of that case where counsel had not

---

**4.** Plaintiff asserts by affidavit that counsel instructed him not to correct errors which he had noted in the presentence report and that, in reliance upon that advice, he did not do so even when repeatedly urged to by the Court. If this assertion is true, it suggests that Petitioner was affirmatively disserved by counsel rather than just passively unrepresented.

**5.** The Court notes that in *Dobbs*, relied upon by the Government, the Court stated that "Bennett's failure to put on mitigating evidence was a tactical judgment, and was not, as Dobbs maintains, based on a fear that he would be rebuffed by the trial judge." The record here indicates that Attorney Violette's asserted "strategy" was in fact based on just such a fear.

**6.** In its brief, the Government, quoting *United States v. Ramsey*, 785 F.2d 184, 194 (7th Cir. 1986), argues that counsel's performance was reasonable because "[w]hen there is no bona fide defense to the charge, counsel can't create one and may disserve his client by attempting a useless charade." Not putting on a defense to a charge may be acceptable trial practice in certain circumstances, and does not necessarily

represent an abdication of counsel's role since during the trial itself there is the opportunity to cross-examine the Government's witnesses and to present a closing argument. With these activities counsel can attempt to undermine the Government's case, and marshal facts and inferences that might raise a reasonable doubt concerning defendant's guilt. Not speaking or in any other way addressing the question of appropriate sentence, on the other hand, may well, as it did in this case, leave a defendant's presentation of himself in the best possible light stillborn. Even if a defendant avails himself fully (which Petitioner did not) of the opportunity to present his version of the offense in the presentence report, that version may well not contain all of the pertinent personal information about defendant, presented by him, which provides the court with a full view of the individual to be sentenced. While the probation and parole officers thoroughly research and present to the court biographical details on each defendant, they are not advocates for the defendant or for the Government. They present the facts as they view them. Petitioner's view of the facts, which may differ markedly, will not be presented unless either he or his counsel do so.

prepared for the sentencing proceeding and presented no mitigating evidence, but had apparently argued on defendant's behalf based on mitigating psychiatric evidence presented during the trial itself. This case is much easier, of course, for counsel did nothing at all. The Court notes that even in the cases cited by the Government, although counsel may have omitted one or another specific avenues of representation, he always did something and made some presentation on the client's behalf. *See, e.g., Dobbs,* 790 F.2d at 1514 n. 15 ("Although Bennett did not present any mitigating evidence, his testimony in the district court reveals that he did make a closing argument in mitigation."); *Mulligan v. Kemp,* 771 F.2d 1444 (attorney made an emotional appeal against the death penalty in his closing argument at the sentencing proceeding); *Briley v. Bass,* 750 F.2d 1238, at 1248 (4th Cir.1984) (defense counsel put on one witness in mitigation and cross-examined those put on by the State).[7]

In this particular case, the record in several other respects reinforces the Court's determination that Petitioner was deprived of *any* aid or assistance of counsel pertaining to his sentencing. It is plain, for example, from a quick perusal of Petitioner's three-line version of the offense in the presentence report[8] that counsel did not aid in its preparation, although such assistance is common and in fact encouraged by the probation office. Moreover, counsel failed to prosecute an appeal on Petitioner's behalf and did not file a Rule 35 motion for reduction of sentence for him. The Court does not in any way suggest that an appeal or a Rule 35 motion is a substitute for a

presentation at the sentencing hearing. However, Petitioner avers in his affidavit that he requested such assistance and Attorney Violette's letter makes clear that because he has no recollection of what took place with regard to either procedure, he is not in a position to rebut that assertion. The record shows that an appeal was filed, but that it was dismissed for lack of prosecution, a failure which may in itself constitute denial of effective assistance of counsel. *See United States v. Gardiner,* 666 F.Supp. 267, 273 and n. 12 (1987). According to Petitioner's affidavit, he had wanted to file a Rule 35 motion and Attorney Violette had told him he would file it after resolution of the appeal. Petitioner was never advised by Violette that the appeal had been dismissed, *see* affidavits of Petitioner and current counsel, Steven Silin, and no Rule 35 motion was filed for him. When Petitioner discovered that the appeal had been dismissed and filed a Rule 35 motion on his own, it was untimely and was dismissed for that reason by this Court. These incidents again demonstrate that counsel was not acting as an advocate for his client despite his client's reliance on him in that capacity.

Counsel's failure to speak on his client's behalf at the sentencing procedure and his failure to aid Petitioner in any manner with regard to sentencing constitute a constructive denial of the assistance of counsel altogether in violation of the Sixth Amendment of the United States Constitution and are sufficient to raise a presumption, in all the circumstances, of actual prejudice in sentencing. Petitioner's sentence, imposed while he was so deprived, is constitutionally invalid.

---

**7.** Underscoring the Court's perception that failure by an attorney to speak at all on a client's behalf amounts to constructive denial of the right to counsel is the fact that in the Court's memory, spanning almost five years on the bench, *no* other counsel has appeared for a client at sentencing and declined to speak on that client's behalf. Prejudice is almost certain to occur when counsel declines to speak for his client at sentencing, for without knowing what reasonably competent counsel might have said and how he or she would have said it, the Court cannot tell what its reaction would have been to the presentation. Although the Court carefully considers the matter of sentence before it takes

the bench, it regards the sentencing proceeding itself as a meaningful colloquy in which ideas are raised and debated, and during which, frequently, the Court changes its perception of the appropriate sentence.

**8.** The Petitioner's version stated, verbatim, in its entirety: "I was between unemployment an work the offense happen on Sep. 11. I went to work Sept. 18. My unemployment ran out in June. That's why I did the crime. *Needed Money.*" This is in contrast to an approximately *four-and-one-half page,* single spaced, typed version of the offense provided by the Government.

Accordingly, it is *ORDERED* that Petitioner's motion to amend his previous *pro se* petition under 28 U.S.C. § 2255 is hereby *GRANTED*. It is also *ORDERED* that Petitioner's sentence be, and it is hereby, *VACATED*. It is *ORDERED* that Petitioner be brought before the Court as soon as possible for imposition of a new sentence. The Court hereby *FURTHER ORDERS* that the original Presentence Report be made available for inspection and reappraisal to both Petitioner and Petitioner's court-appointed counsel, Mr. Silin. Counsel shall promptly thereafter confer with the officer preparing the report to attempt to resolve any dispute as to the proper contents of the report.

So ORDERED.

## APPENDIX A

UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

UNITED STATES OF AMERICA

v.

DELORES ROLLINS

CRIMINAL NO. 85-16-B

TRANSCRIPT OF SENTENCING PROCEEDINGS

Pursuant to notice, the above-entitled matter came on for sentencing before Hon. Gene Carter, Judge, United States District Court, District of Maine, at the United States Courthouse, Bangor, Maine, on July 3, 1985, at which time and place the following proceedings were had:

APPEARANCES:

Timothy Woodcock, Assistant United States Attorney, District of Maine, for the Government.

Paul Chaiken, Esq., Bangor, Maine, for the Defendant.

HAROLD M. HAGOPIAN

OFFICIAL COURT REPORTER

UNITED STATES DISTRICT COURT

BANGOR, MAINE

PROCEEDINGS

(In open court.)

THE COURT: Mr. Woodcock?

MR. WOODCOCK: Thank you, your Honor. The next matter is United States of America v. Delores Rollins, Criminal Number 85-16-B. The defendant is here in the courtroom with counsel, Paul Chaiken, and before the court, your Honor, for—appearing on the defendant's motion for new trial and for sentencing.

THE COURT: Thank you. Good morning, Mr. Chaiken.

MR. CHAIKEN: Good morning, your Honor.

THE COURT: Ms. Rollins can have a seat at counsel table, and if you'll come forward to the podium, Mr. Chaiken.

MR. CHAIKEN: Your Honor, before we —Ms. Rollins had an opportunity to speak with me earlier this week, but this morning was the first time that we had a conference in person. She advised me earlier and instructed me to withdraw the motion for new trial. I would have advised the court earlier, but I felt compelled to speak with her personally about the ramifications of such a decision. I'm confident she's making such a decision with full knowledge of its implications, and I respectfully request this time for leave to withdraw the motion for a new trial.

THE COURT: Did she give you—and you don't have to answer this question if you don't wish to do so, if you think it in any way would imperil your client's interests—but did you recommend to her that the motion be pursued?

MR. CHAIKEN: Yes, I did, your Honor. I told her the implications of withdrawing it at this point, the likelihood of success and the likelihood of failure that I had projected in the beginning. She recognized all of that, your Honor, and for reasons that I am satisfied with, she has intelligently made the decision to provide me with that instruction, and that is why I respectfully ask the court leave to withdraw the motion.

THE COURT: Did she give you a reason for withdrawing the motion?

MR. CHAIKEN: Yes, she did, your Honor.

THE COURT: Just yes or no.

MR. CHAIKEN: Yes, she did.

THE COURT: Are you satisfied that that reason is a reasonable one that is a proper justification for her departing from your advice?

MR. CHAIKEN: Yes, sir, it is a reasonable and valid consideration that she has given me, and she does understand its implications, and is acting with knowledge.

THE COURT: Ms. Rollins, you have heard what Mr. Chaiken, your counsel, has represented to the just now, have you not?

THE DEFENDANT: Yes.

THE COURT: And I ask you directly, is it your firm conviction that you wish to withdraw the pending motion for a new trial?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied that you understand what you're doing in doing so?

THE DEFENDANT: Yes.

THE COURT: And the consequences of that act?

THE DEFENDANT: Yes.

THE COURT: Thank you, ma'am. You may be seated.

Does the government have any objection to the withdrawal of the motion for a new trial?

MR. WOODCOCK: No objection, your Honor.

THE COURT: There being no objection, and on the motion of the defendant, after inquiry by the court, the court will grant the defendant's motion to withdraw the pending motion for new trial, and the motion will be endorsed, "Withdrawn."

MR. CHAIKEN: Thank you, your Honor.

THE COURT: Now, if you would have Ms. Rollins join you at the podium, Mr. Chaiken.

You are Delores Rollins?

THE DEFENDANT: (Nodding head in the affirmative.)

THE COURT: And you are the defendant named in this indictment, are you not?

THE DEFENDANT: Yeah.

THE COURT: You are represented here this morning, are you not, by your court-appointed attorney, Paul Chaiken?

THE DEFENDANT: Yes.

THE COURT: Do you authorize Mr. Chaiken to act and speak for you and on your behalf in all respects throughout these proceedings?

THE DEFENDANT: Yes.

THE COURT: Mr. Chaiken, have you received a copy of the written presentence investigation report?

MR. CHAIKEN: Yes, your Honor, I have.

THE COURT: And have you had an adequate opportunity to review its contents?

MR. CHAIKEN: Yes, sir.

THE COURT: And have you reviewed those contents with this defendant?

MR. CHAIKEN: Yes, on multiple occasions.

THE COURT: Has this defendant actually read the contents of the report herself?

MR. CHAIKEN: Yes, sir.

THE COURT: Are you satisfied that she understands the contents of the report?

MR. CHAIKEN: Yes, sir.

THE COURT: Ms. Rollins, are you satisfied that you understand fully all of the contents of this written presentence investigation report?

THE DEFENDANT: Yes.

THE COURT: Is there any respect, Mr. Chaiken, in which you wish to address the court concerning any alleged inaccuracy in the contents of the report?

MR. CHAIKEN: It is not an inaccuracy, but it is something that the court ought to be aware of, your Honor. Since the report was issued and sent to me, specifically on June 28, 1985, Ms. Rollins went before the district court in Belfast and a divorce hearing occurred in front of Judge Jack Smith. Divorce was granted. Of course, the peri-

od for appeal is still running, but it is effective, and the decree will also include a provision that Ms. Rollins name be changed to Delores A. Gardiner, and that her daughter, Samantha—she and—excuse me. Ms. Rollins and Mr. Rollins will share joint parental responsibility with respect to the child.

THE COURT: Do you have with you today a copy of the decree?

MR. CHAIKEN: No, your Honor. I did not participate in that proceeding. I will obtain it and forward it forthwith to the court.

THE COURT: Well, I would ask that you forward it to the probation officer who prepared the report, Mr. Hawley, and that before you leave the courthouse today you simply confer with him so that that information may be accurately reflected in the report.

·MR. CHAIKEN: Thank you, sir.

THE COURT: Is there any other respect in which you have—you or your client have any concern with respect to the accuracy of the contents of the report?

MR. CHAIKEN: The only other concern that we have, your Honor, is that the report, in our view, contains a lot of extraneous information provided by the prosecutors in their prosecutor's version. We would not take the court's time to discuss all of that information. Obviously, the defendant, herself, is before the court, and the other individuals are not before the court in this particular proceeding.

The one antithetical statement that I would note is that in one paragraph the prosecutors ask the court to consider all of Arthur Gardiner's statements as perjurious; in the next paragraph they ask the court to—

THE COURT: Where does this occur, now?

MR. CHAIKEN: On page 4 of the report, your Honor, at the paragraph immediately above "Delores Rollins," the statement is made, "In the opinion of the government, this was a false statement and having been offered under oath was perju-

rious." That relates, of course, to Mr. Gardiner's testimony—

THE COURT: Well, Mr. Chaiken, the court presided at trial. The court witnessed that that testimony was, in fact, given; and the court witnessed and knows of the verdict returned by the jury. Is it of any importance whatever that the court take into account the government's opinion that it was perjurious, in view of the fact that that it is highly likely from the evidence of what the court knows in this case that at least the jury considered it to be, or that for some reason they disbelieved Mr. Gardiner?

MR. CHAIKEN: I agree with what the court has said, your Honor. The only point I wish to make is that on the one hand the prosecutors are saying the court must believe Arthur Gardiner's statements that Delores Rollins participated with him in other drug activity, and in this ·paragraph which I've quoted to the court, the prosecutors are saying that Arthur Gardiner is not one to be believed by the court. And I just wanted to note that antithetical character of the prosecutor's version of the offense.

Other than that extraneous information, your Honor, as it concerns Ms. Rollins, I believe there is nothing that we find that is inconsistent with that—inconsistent with accuracy as far as this presentence report is concerned and Ms. Rollins is concerned.

THE COURT: Thank you, very much.

Mr. Woodcock, I'll hear you on sentencing at this time.

MR. WOODCOCK: Thank you, your Honor.

To begin with, the government would note that in its opinion it's presented no extraneous information. The information is relevant because the question before the court is what kind of a person stands before the court. Information provided by the government relating to the defendant's character and prospect for rehabilitation are properly considered by the court, and accordingly, the government disagrees with defense counsel's characterization.

As far as the crime that is before the court, your Honor, it is a serious crime that

involves the distribution of cocaine, a growing problem within this district. The government would note that in its review of the presentence report it has found no expression whatsoever on the defendant's part that she was involved in this crime; there is no acknowledgment of remorse; there is no acknowledgment of any wrongdoing whatsoever. In fact, your Honor, if the government's recollection of Ms. Rollins' testimony or Ms. Gardiner's testimony, as it may be, is correct, her own description of what she did to the probation officer is inconsistent with what she told this court under oath, and that is, she did admit under oath that she did bring something out to the undercover policeman and give it to him.

THE COURT: In the report it's indicated that her version to the probation officer was that she didn't recall doing so, or words to that effect; am I correct?

MR. WOODCOCK: Yes, your Honor. And my—the government's recollection is that she did recall on the stand taking the wadded piece of paper out to the undercover policeman. That testimony was given under oath. The government can't account for that—the difference—the failure of memory there, except, in the government's conclusion, it's disengenuous.

The government would also note that the defendant has not cooperated in any way in this case. And the government would also draw the court's attention to the representations made by Stephen Carter. Stephen Carter was a person who was not drawn to the court's attention or the probation officer's attention by the government, but, rather, by the defendant herself, and accordingly, your Honor, I think deserves some credibility. Mr. Carter would indicate, according to the report, that Ms. Rollins' or Ms. Gardiner's involvement in this case was not an isolated incident; that, in fact, she was involved in the distribution of marijuana, cocaine, and LSD over the period of time that he knew her.

This statement is, your Honor, backed up by Arthur Gardiner's remark to Andrew D'Eramo that he and Delores Rollins were, at one point, in the statement made on November 20, 1984, going to get some cocaine.

Now, I would point out to the court that this statement does differ from the statement offered by Mr. Gardiner on the stand, because it was made to an undercover policeman under circumstances where the person uttering the statement did not know the identity of the undercover policeman, and, therefore, would not know the implications of what he was saying.

Finally, your Honor, the government takes the position that Ms. Gardiner's or Ms. Rollins' testimony on the stand was perjurious, and that that is not a cheerful datum for the rehabilitative prospects of the defendant.

And finally, your Honor, there are papers before this court, affidavits before this court, that would indicate that Mr.—Mr. Carter, because he did not provide the information sought by the defendant, was verbally threatened by the defendant.

And, under all those circumstances, your Honor, the government recommends six years in prison for the defendant.

THE COURT: Thank you, Mr. Woodcock.

Mr. Chaiken, the court would hear from you on sentencing at this time.

MR. CHAIKEN: With respect to the credibility of Mr. Carter, your Honor, and with respect to the affidavits, that issue was resolved by Judge Cyr at a motion hearing to revoke bail. Indeed—

THE COURT: You I understand that his decision was—and not to reject the credibility of Mr. Carter with respect to the events in question, but simply to conclude that the government had sought revocation of bail under an inappropriate and nonapplicable statute; is that correct?

MR. CHAIKEN: That's my understanding. I did not attend that hearing. It was scheduled at the time I was out of town. It was covered by Mr. Terry of our office.

THE COURT: There was an order—

MR. CHAIKEN: It was consented to buy us, your Honor, because we recognized

that the best interests of everyone would be served if for Mr. Gardiner just to avoid all contact with Mr. Carter.

THE COURT: And that order was entered by Judge Cyr on May 24.

MR. CHAIKEN: Yes, your Honor.

THE COURT: None of those circumstances militate against the credibility of Mr. Carter with respect to the events he has described, do they?

MR. CHAIKEN: It's hard to evaluate Mr. Carter, your Honor, and indeed, when I did request Mr. Hawley to interview Mr. Carter, he and I had a conversation about that, and it—but immediately, at least, Mr. Carter was a very difficult, if not inconsistent, individual who ought to be evaluated very carefully.

But getting to the facts upon which the court has to act in this particular case at sentencing, I would point out to the court that the conduct of this defendant before this court is an isolated incident. We would rely upon the court's recollection of officer D'Eramo's testimony, specifically the amount of time that he was in that area, and that the only time he met Delores Rollins in person, that the only time he alleged and the jury believed that she had any involvement in drug activity, was when she came out of that trailer after her brother had arranged this drug transaction. And the court must recall that the amount of narcotics or cocaine involved in this particular transaction is only one gram, grain —gram, excuse me, which is significantly less than one ounce. We are not talking about a substantial amount of drugs.

Even more importantly, your Honor, the government has never shown, has never been able to show, and would never be able to show that Rollins in any way ever provited from this activity, this particular incident, much less all of the other incidents that they allege she participated in but have never charged her with, have never been able to prove.

We recognize the court's position and philosophy with respect to sentencing, particularly in drug cases, but we do request that this individual be observed as an individual, and her level of participation, as the jury deemed, be considered for its isolated —it's an isolated incident, and her responsibilities to her child be considered, her financial condition be considered. And, more importantly, your Honor, the lack of proof about any of the other allegations that the government has raised both in its version and Mr. Woodcock's statements.

Thank you, your Honor.

THE COURT: Thank you, Mr. Chaiken.

Ms. Gardiner, you have a right, as a person before the court for imposition of sentence, to address the court, to say anything to the court which you think would be in your best interests to have the court know, or anything that would be of assistance to the court. I invite to you exercise that right at this time if you wish to do so.

THE DEFENDANT: I would like to say that I still stand by my statement, and that's it.

THE COURT: Anything else?

MR. CHAIKEN: Your Honor, I would clarify one thing, because we've talked about different statements. Ms. Rollins and I talked about, obviously, her statement to the court this morning. The statement she is referring to is the statement she made on the witness stand before this court, itself.

THE COURT: Yes.

THE COURT: Mr. Woodcock, anything further?

MR. WOODCOCK: Only, your Honor, that if the—it escapes the government what relevance it is if it is alleged that Ms. Rollins profited from the drug transaction. What she did with her money is of no concern to the government. As to Mr. Carter's statement, the government would simply restate that it was Ms. Rollins, herself, who brought this individual to the attention of the court, and that I think she is thereby endorsing the man's credibility.

THE COURT: Anything further?

MR. CHAIKEN: Only the obvious statement, your Honor, that if Ms. Rollins believed Mr. Carter would say what he was going to say, obviously, she would not have

presented his name to the probation officer for his review. Obviously, Mr. Carter said something different to Ms. Rollins, and that speaks for itself just from the nature of the request being made. Mr. Carter is someone that looks out after his own interests and speaks out of both sides of his mouth.

THE COURT: Thank you.

The court once again will state for the record that it has thoroughly and carefully considered the written materials submitted with respect to this sentencing. The defendant, Delores Rollins, also known as Delores A. Gardiner now, as I understand from the representation of counsel.

I can I find very little of a redeeming nature in these materials, or in the comments of counsel with respect to your conduct either giving rise to this prosecution, your conduct in the course of trial, or your conduct since that time. This is a serious offense. I am not at all satisfied that this is an isolated instance of that offense. The jury completely disbelieved, had to, your testimony that you didn't know what was contained in the packet. And I have to respect the verdict of the jury in that respect. Your conduct since that time, and apparently providing a source of information for purposes of this sentencing process, which ultimately turned out to produce information indicating that it is not an isolated circumstance, satisfies the court without considering any other aspects of the Stephen Carter matter; that this was simply part of a continuing pattern of conduct involved in and involving illegal trafficking and distribution of drugs.

In view of the seriousness of the offense, it is adjudged that on the indictment herein the defendant be, and she is hereby committed, to the custody of the Attorney General of the United States or his authorized representative for imprisonment for a term of five years; and that in addition thereto, the defendant shall serve a special parole term of three years as required by the pertinent statute.

I must advise you, Ms. Gardiner, that you have a right to appeal the judgment of this court, including your conviction. And I must advise you that if you wish to do that, you must file a notice of appeal within ten days from today.

Do you understand that?

THE DEFENDANT: (Nodding head in the affirmative.)

THE COURT: Will you answer orally, please?

THE DEFENDANT: Huh?

THE COURT: Do you understand?

THE DEFENDANT: Oh, yes.

THE COURT: And if you wish to enter an appeal, you should request that your attorney, Mr. Chaiken, file such a notice of appeal within ten days.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And if for any reason, I advise you, Mr. Chaiken does not or is unwilling to file such a notice of appeal, and you nevertheless wish to take an appeal, that you must advise the clerk of this court, by letter or otherwise, of your intention to appeal, and if you do so, the court directs that your expression of such intent will be treated by this court as the formal entry of a notice of appeal, and the clerk will be directed in that event to enter your notice of appeal if it is timely filed or not filed.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: So that even if Mr. Chaiken should not file a notice of appeal as you desire, you have it within your ability simply to notify the clerk of this court, and a notice of appeal will be filed on your behalf.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: The prisoner is remanded forthwith into the custody of the United States Marshal in execution of the sentence.

MR. CHAIKEN: Thank you.

THE COURT: Thank you, Mr. Chaiken.

(Whereupon the proceeding was concluded.)

CERTIFICATE

I hereby certify that the foregoing is a true and complete transcription of my stenographic notes taken of the previously-identified matter, said proceedings having been reported verbatim, through the use of a computer-aided transcription device, on the date indicated herein.

/s/ Harold M. Hagopian
Official Court Reporter