[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-15640
_____

D.C. Docket Nos. 8:10-cv-01052-JDW-EAJ & 8:07-cr-00446-JDW-EAJ-1

CLIFFORD DARDEN,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 12, 2013)

Before WILSON and HILL, Circuit Judges, and HUCK,[*] District Judge.

HUCK, District Judge:

_____

[*] Honorable Paul C. Huck, Senior United States District Judge for the Southern District of Florida, sitting by designation.

We are called upon to consider a question that has important implications for our Sixth Amendment jurisprudence: When reviewing an ineffective-assistance-of-counsel claim, must the district court presume prejudice where defense counsel, without consulting defendant, concedes that the prosecution has set forth enough evidence to convict defendant of some of the offenses for which he was charged in order to enhance defense counsel's credibility when defending against the other charges?  On the specific facts presented here, we answer that question in the negative.

## I.    Background

Back in October 2007 Appellant Clifford Darden, a chef and former professional basketball player, was indicted on two counts of obstructing commerce by robbery, 18 U.S.C. §§ 1951, 1952, and two counts of brandishing a firearm in connection with each robbery, 18 U.S.C. § 924(c)(1)(A).  The source of his troubles began on June 4, 2007.

On that day a large black male wearing camouflage and brandishing a firearm entered Kris and Pamela's Market — a local convenience store in the Tampa area.  The gunman entered just as Kris and Pamela's opened for business, ordered the store clerk to the floor, and attempted to loot the cash register of its contents.  When attempting to open the register, the gunman encountered difficulty

2

and ordered the clerk to open it for him.  The clerk complied, and the gunman made off with approximately $300.

Just one month later, on July 3, 2007, Darden and his co-conspirator Aaron Hollins, paid an afternoon visit to Quick Stop — another Tampa convenience store.  Armed with a revolver, Darden ordered the store clerk to open the store's two cash registers.  Darden and Hollins ran off with $2,000 in cash.

Darden and Hollins soon realized they weren't dealing with just any store clerk.  Armed with his own 9 millimeter handgun the store clerk pursued Darden and Hollins, and exchanged fire with Darden near the store's parking lot.  Darden was on the losing side of that battle, taking bullets to his arm and the side of his body.  His mobility impeded, Darden was soon apprehended by the store clerk. When police arrived Darden spontaneously admitted to committing the robbery. He did so again at the hospital.

At trial, defense counsel faced a difficult decision: they could defend vigorously against both robbery charges or, in the face of overwhelming evidence, concede guilt as to the July 3 robbery to save credibility when defending Darden against the June 4 robbery.  Without consulting Darden, defense counsel chose the latter option.[1]

---

[1] We assume for purposes of this appeal that defense counsel did not in fact consult with Darden regarding the decision to strategically concede guilt as to the July 3 robbery.

During opening and closing statements defense counsel warned the jury that the government's intention in charging Darden for both robberies was to "buy a guilty verdict, and get one free."  Defense counsel conceded that "[t]here is more than enough evidence" to convict Darden of the July 3 robbery, but stressed that the evidence "will not" be enough to "catapult a guilty verdict" for the June 4 robbery.  To this end, defense counsel repeatedly juxtaposed the amount of evidence the government was offering in connection with each robbery, and warned that while "convenient" to convict Darden for both crimes, the jury should avoid giving the government the "two-for-one" it was seeking.  In other words, defense counsel's trial strategy aimed to gain the jury's trust by candidly acknowledging that there was enough evidence to convict Darden of the July 3 robbery, while aggressively arguing that the June 4 robbery evidence was, in stark contrast, much weaker and insufficient to convict.  Darden was convicted of all counts.

Darden sought to undo the result at trial and appealed the jury's guilty verdict.  Unsuccessful but still undeterred, Darden collaterally attacked his conviction under 28 U.S.C. § 2255, contending that he had been denied effective assistance of counsel at trial.  The district court denied the motion, and relevant for our purposes, rejected Darden's contention that under United States v. Cronic, 466 U.S. 648 (1984), defense counsel's decision to concede guilt on one of the two

4

robbery charges without first consulting him was presumptively prejudicial.  The district court instead analyzed Darden's claim under the default framework the Supreme Court adopted in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Applying that framework, the district court found that, in view of the overwhelming evidence of Darden's participation in the July 3 robbery, the result of his trial would have been the same even without defense counsel's concession without consultation.

Our job at this stage of the litigation is a limited one: to determine whether the district court's decision to analyze Darden's ineffective-assistance-of-counsel claim under <u>Strickland v. Washington</u>, rather than presume prejudice under <u>Cronic v. United States</u>, was in error.[2]

## II.    Analysis

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. CONST. amend. VI.  The Supreme Court teaches us that the criminal defendant's right to counsel "is the right to the <u>effective</u> assistance of counsel."  <u>United States v. Gonzalez-Lopez</u>, 548 U.S. 140, 147 (2006) (emphasis added) (internal quotation marks & citation omitted).  The right to <u>effective</u>

---

[2]  We certified the following question: Whether the district court's failure to apply the presumption-of-prejudice standard, set forth in <u>United States v. Cronic</u>, 466 U.S. 648 (1984), to Darden's ineffective assistance of counsel claim constituted error in light of <u>Florida v. Nixon</u>, 543 U.S. 175 (2004) and <u>Harvey v. Warden, Union Corr. Inst.</u>, 629 F.3d 1228 (11th Cir. 2011), <u>cert. denied</u> <u>Harvey v. Redish</u>, 132 S. Ct. 577 (2011).

assistance of counsel "is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." United States v. Cronic, 466 U.S. 648, 658 (1984).

The criminal defendant's right to effective assistance does not mean he is entitled to a trial free of mistakes. Because the limits of the right finds its source in the Due Process Clause's guarantee to a fair trial, "[c]ounsel cannot be 'ineffective' unless his mistakes have harmed the defense (or, at least, unless it is reasonably likely that they have)." Gonzalez-Lopez, 548 U.S. at 147. To determine whether counsel's performance at trial fell below the level of effectiveness the Sixth Amendment usually requires courts to apply the familiar two-part test established in Strickland v. Washington, 466 U.S. 668 (1984).

First, the defendant must show that his lawyer's performance was "deficient." To do this, the defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and show that it was objectively unreasonable. Id. at 687-89. Second, the defendant must show that the lawyer's deficiency caused prejudice to his defense — i.e., there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

The same day the Court adopted the Strickland framework, it also made clear in United States v. Cronic that Strickland doesn't apply where the accused is denied counsel at a critical stage of trial or "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." Cronic, 466 U.S. at 659. When either occurs, the reviewing court presumes the defendant was prejudiced and his conviction is in turn vacated. At issue in this case is whether defense counsel failed entirely to subject the government's case to meaningful adversarial testing.

The Supreme Court has twice revisited Cronic — first in Bell v. Cone, 535 U.S. 685 (2002), and later in Florida v. Nixon, 543 U.S. 175 (2004) — to clarify when defense counsel "fail[s] to function in any meaningful sense as the Government's adversary," Cronic, 466 U.S. at 666.

In Bell v. Cone, the defendant collaterally attacked his sentence, contending that his attorney's failure to introduce mitigating evidence and waiver of final argument at sentencing violated the Sixth Amendment. The question presented to the Bell Court was whether defense counsel's failure to "mount some case for life after the prosecution introduced evidence in the sentencing hearing and gave a closing statement," Bell, 535 U.S. at 696 (citation and internal quotation marks omitted), required that defendant's ineffective-assistance-of-counsel claim should be analyzed under Cronic rather than Strickland.

7

Because defense counsel's alleged error was "not that [he] failed to oppose the prosecution throughout the sentencing proceeding as a whole," id. at 697, but rather that "he failed to do so at specific points," id., the Court held that Strickland applied. The Court reaffirmed that only where defense counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," id. (emphasis in original), is Cronic the proper standard under which to analyze a defendant's ineffective-assistance-of-counsel claim. See Haynes v. Cain, 298 F.3d 375, 382 (5th Cir. 2002) (en banc), cert. denied, 537 U.S. 1072 (2002) (the Supreme Court indicated in Bell that "when defense counsel pursue a strategy, even it involves conceding certain elements or remaining inactive at specific points during the trial, we will examine the effectiveness of their performance and the propriety of their decisions under Strickland") (citation omitted).

Later in Florida v. Nixon, the Court emphasized just how narrow is the Cronic exception to Strickland. There, the Court considered whether defense counsel's concession of guilt without defendant's express consent in a capital case in order "to concentrate the defense on establishing, at the penalty phase, cause for sparing the defendant's life," was per se prejudicial. Nixon, 543 U.S. at 178.

The Florida Supreme Court had held that defense counsel's concession of guilt was "presumptively inadequate" because it was the functional equivalent of a guilty plea. Id. at 190. A unanimous Supreme Court rejected wholesale the

8

Florida Supreme Court's holding, observing that when a defendant pleads guilty he loses all his trial rights — e.g., "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal, id. at 187 — and "no proof by the prosecution need be advanced," id. at 188 (citing Boykin v. Alabama, 395 U.S. 238, 242-43 (1969)). The same isn't true where defense counsel strategically concedes that there is enough evidence to convict his client — the government must still advance "competent, admissible evidence establishing the essential elements of the crimes with which [the defendant] was charged." Id. After concluding that a strategic concession of guilt was not akin to a guilty plea, the Court then considered the question whether defense counsel's strategic concession of guilt should nevertheless be evaluated under Cronic.

As in Bell, the Court noted at the outset that Cronic's presumption-of-prejudice standard was "reserved for situations in which counsel has entirely failed to function as the client's advocate," id. at 189. Defense counsel's concession of guilt, however, did not "rank as a 'fail[ure] to function in any meaningful sense as the Government's adversary.'" Id. at 190 (brackets in original) (citation omitted). This is because defense counsel "may reasonably decide to focus on the trial's penalty phase, at which time counsel's mission is to persuade the trier that his client's life should be spared." Id. at 191. And "counsel cannot be deemed ineffective for attempting to impress the jury with his candor and his unwillingness

9

to engage in a 'useless charade,'" id. at 192 (citing Cronic, 466 U.S. at 656-57 n.19). Thus, under Nixon, Cronic does not apply when defense counsel strategically concedes guilt in a capital case in order to more credibly advance defendant's case for leniency during the penalty phase.

While neither Cronic, Bell, nor Nixon directly addressed the question posed to us here — whether defense counsel can strategically concede guilt to one set of charges, when the evidence is overwhelming, in order to gain credibility and focus the defense on the second, more winnable set of charges — their teachings lead us inexorably to conclude that Cronic is not the proper standard under which to evaluate defense counsel's strategic concession.

Any competent trial lawyer understands that in order to mount a successful case before a jury, credibility must never be sacrificed. To retain credibility, defense counsel must often make concessions that, viewed narrowly, may appear detrimental to the client's cause. But as the Supreme Court has acknowledged "[b]y candidly acknowledging [defense counsel's] client's shortcomings, counsel might . . . buil[d] credibility with the jury and persuade it to focus on the relevant issues in the case." Yarborough v. Gentry, 540 U.S. 1, 6 (2003) (citing J. Stein, Closing Argument § 204, p. 10 (1992-1996) ("[I]f you make certain concessions showing that you are earnestly in search of the truth, then your comments on

10

matters that are in dispute will be received without the usual apprehension surrounding the remarks of an advocate.").

This tried-and-true strategy applies not only to capital cases to preserve credibility with the jury during the penalty phase, but also where, as here, defendant faces an unwinnable battle against one set of charges brought against him. Defense counsel would reasonably find it strategically advantageous to concede guilt on those charges to preserve credibility in defending against the others. This classic tactic dates back to the likes of Aristotle ("a speech should indicate to the audience that the speaker shares the attitudes of the listener, so that, in turn, the listener will respond positively to the views of the speaker"), Peter C. Lagarias, Effective Closing Argument §§ 2.05-2.06, pp. 99-101 (1989), and Clarence Darrow, who famously conceded his clients' guilt during closing argument in a capital case to save their lives at sentencing, see Clarence S. Darrow, Closing Argument for the Defense in the Leopold-Loeb Murder Trial, FAMOUS AMERICAN JURY SPEECHES 1086 (Frederick C. Hicks ed., Legal Classics Library 1989) (1925).

While the Eleventh Circuit has yet to consider whether defense counsel's concession of guilt is a viable trial strategy, our sister circuits have observed its utility. These courts maintain that when counsel concedes a defendant's guilt as a "tactical decision, designed to lead the jury towards leniency on the other charges

11

and to provide a basis for a later argument (to the judge) for a lighter sentence," such a "tactical retreat[]" is "deemed to be effective assistance," United States v. Tabares, 951 F.2d 405, 409 (1st Cir. 1991) (Breyer, J.) (citation and internal quotation marks omitted); see also, e.g., United States v. Holman, 314 F.3d 837, 840 (7th Cir. 2002), cert. denied, 538 U.S. 1058 (2003) ("[w]e have held that conceding guilt to one count of a multi-count indictment to bolster the case for innocence on the remaining counts is a valid trial strategy").

We agree. Darden's contention that Cronic applies anytime defense counsel concedes guilt would force us to ignore — indeed, reject — the obvious benefits of strategically conceding partial guilt. Under Darden's theory defense counsel's concession as to the July 3 robbery amounts to a failure to subject the prosecution's case to meaningful adversarial testing. And only because the government tried all the charges together does it make it seem otherwise.

At best, Darden's argument may have superficial appeal, but a closer inspection reveals its defects. For starters, the argument fails to come to grips with the fact that defense counsel conceded obvious guilt as to the July 3 robbery for the express purpose of preserving credibility with the jury to focus on vigorously defending the June 4 charges and therefore potentially save Darden from a 25-year

increase in prison time.[3]  Reviewing defense counsel's concession of guilt in a vacuum ignores this critical consideration.  To do so would also be in substantial tension with Bell and Nixon, which teach us to apply Strickland where counsel failed to oppose the prosecution's case only "at specific points" in a proceeding, Bell, 535 U.S. at 697, and to apply Cronic only where "counsel has entirely failed to function as the client's advocate," Nixon, 543 U.S. at 189.

Here, it is readily apparent that defense counsel's performance at trial was more than adequate, and far from the sort the Supreme Court envisioned would trigger Cronic's presumption of prejudice.  Defense counsel stressed at every opportunity the lack of evidence against Darden in connection with the June 4 robbery, particularly in contrast with that of the June 4 robbery.  Defense counsel brought to the jury's attention the fact that the state prosecutor declined to prosecute Darden on the June 4 robbery as a result of insufficient evidence.  Defense counsel highlighted for the jury during closing argument the fact that the June 4 robbery store clerk, in contrast to the June 4 robbery store clerk, could not identify Darden as the perpetrator shortly after the crime in a photo lineup nor at trial.  Defense counsel directed the jury's attention to the fact that the fingerprints on the register didn't match Darden's.  And, most importantly, defense counsel

---

[3]  As the district court made clear, Darden faced a mandatory-minimum sentence of seven years' imprisonment if convicted of just one of the firearm counts for which he was charged.  But if convicted of a second firearm charge, Darden was looking at a consecutive mandatory-minimum term of twenty-five years' imprisonment.

13

repeatedly planted in each juror's mind the possibility that the government was hoping for a two-for-one — i.e., that the overwhelming evidence for the July 3 robbery would be enough to influence the jury to convict Darden of the unrelated June 4 robbery. To this end, defense counsel repeatedly contrasted the sufficiency of the evidence the government advanced against Darden for the June 4 and July 3 robberies. This strategy is effective not only in terms of putting into perspective how thin the June 4 robbery evidence was, but also comports with the Supreme Court's lauding defense counsel in Nixon "for attempting to impress the jury with his candor and his unwillingness to engage in a 'useless charade,'" Nixon, 543 U.S. at 192.

Against this background, Darden's reliance on United States v. Swanson, 943 F.2d 1070 (9th Cir. 1991), is misplaced. There, defense counsel conceded at trial that "there was no reasonable doubt regarding the only factual issues in dispute," id. at 1072 (emphasis) — that is, whether defendant committed the bank robbery for which he was charged. The panel held that "[a] lawyer who informs the jury that it is his view of the evidence that there is no reasonable doubt regarding the only factual issues that are in dispute has utterly failed to 'subject the prosecution's case to meaningful adversarial testing.'" Id. at 1074 (emphasis added) (citing Cronic, 466 U.S. at 659). The Swanson panel thus applied the Cronic's presumption-of-prejudice standard. Notably, the panel made clear that

14

"in some cases a trial attorney may find it advantageous to his client's interests to concede certain elements of an offense or his guilt of one of several charges." Id. at 1075-76. Swanson, in contrast to this case, did not fit that profile because, as even the government conceded, there wasn't "any strategy that can justify [defense counsel]'s betrayal of his client." Id. at 1075.

In light of the certified question, supra note 1, we reach the related issue whether Florida v. Nixon and Harvey v. Warden, Union Corr. Inst., 629 F.3d 1228 (11th Cir. 2011), cert. denied Harvey v. Redish, 132 S. Ct. 577 (2011), require us to hold that defense counsel's failure to consult with Darden regarding the concession strategy triggers Cronic's presumption-of-prejudice standard. We hold that it does not.

In Nixon, the Supreme Court maintained that "[a]n attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy." 543 U.S. at 187 (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)); see also Strickland, 466 U.S. at 688 ("From counsel's function as assistant to the defendant derive . . . the [] duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution."). From this, Darden contends that when defense counsel doesn't consult with his or her client before strategically conceding guilt Cronic automatically applies. Put another way,

15

Darden contends that the result in Nixon would have been different had defense counsel not consulted with defendant before strategically conceding guilt.

Darden overreads Nixon's dicta. The Court has never retreated from its holding in Cronic that only where defense counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," should prejudice be presumed. Nixon is no exception. There, the Court declined to apply Cronic because defense counsel's strategic concession did not "rank as a 'failure to function in any meaningful sense as the government's adversary,'" notwithstanding defendant's failure to consent to the strategy. Nixon, 543 U.S. at 190 (internal brackets omitted) (quoting Cronic, 466 U.S. at 666). The Supreme Court's emphasis on whether defense counsel dutifully tested the government's case — rather than defendant's failure to consent — is a telling indication that while consultation with defendant is certainly among defense counsel's duties, the dereliction of that duty does not automatically prejudice the defendant.

Darden ignores all this. He contends that under Nixon defense counsel's failure to consult with defendant before strategically conceding guilt automatically triggers Cronic's presumption-of-prejudice standard, even if defense counsel's strategy to concede guilt was a reasonable, even excellent one. If we accept Darden's contention we must also accept that Cronic can apply even in cases where defense counsel subjected the government's case to meaningful adversarial

16

testing.  Without further direction from the Supreme Court, we decline Darden's invitation to expand what the Court intended to be a limited exception to Strickland — that applies only when the defendant is actually or constructively denied effective assistance of counsel — into a broader, unintended exception.

Darden suggests that the panel in Harvey v. Warden, Union Corr. Inst. accepted his reading of Nixon.  He's incorrect.  There, we considered, among other things, whether defense counsel's concession of guilt at the guilt phase of a capital trial — without consulting his client — was enough to presume prejudice under Cronic.  Because AEDPA governed the defendant's petition, the panel's only task was to decide whether the Florida Supreme Court's decision to not apply Cronic was contrary to or an unreasonable application of federal law.

While the panel held that AEDPA deference foreclosed defendant's claim, see Harvey, 629 F.3d at 1251 ("The failing of Harvey's argument lies not with its logic, but with the deference we must afford the Florida Supreme Court under AEDPA."), it did note that Nixon can be read in one of two "compelling ways." Id. at 1251.  On the one hand, the Supreme Court's statement that "[a]n attorney undoubtedly has a duty to consult with the client," Nixon, 543 U.S. at 187, "suggest[s] that consultation could be the key fact that requires Strickland prejudice to be presumed under Cronic," Harvey, 629 F.3d at 1251.  On the other hand, the fact that the Nixon Court went to pains to distinguish a guilty plea and

17

concession strategy "suggests that consent is irrelevant for determining whether" prejudice should be presumed.  Id.  And furthermore, "Cronic's presumed prejudice standard is only available in extreme circumstances 'where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.'"  Id. at 1251 (quoting Cronic, 466 U.S. at 659).  We are convinced the latter reading is correct, and the former an unwarranted expansion of the Cronic exception.

While we're writing on a clean slate, we do have the benefit of the Ninth Circuit's decision in United States v. Thomas, 417 F.3d 1053 (9th Cir. 2005), cert. denied, Thomas v. United States, 526 U.S. 1121 (2006).  There, as here, defense counsel strategically conceded that his client was guilty of one of the offenses for which he was charged — without discussing the strategy with him — so that counsel's challenge to other charges appeared more credible.  Id. at 1055.  After being convicted of all the charges brought against him, the defendant in Thomas raised an ineffective assistance of counsel claim strikingly similar to that which Darden raises here.  Id. at 1055-56.  The panel majority declined to apply Cronic because defense counsel "had a sensible reason for not contesting [defendant]'s participation in the [] robbery" for which there was overwhelming evidence against him, id. at 1058, and observed that defense counsel's "failure to consult and obtain consent in and of itself does not render [his] strategic decision [to concede guilt]

18

presumptively prejudicial." <u>Id.</u> at 1059.  We can find no reason to disagree with the Ninth Circuit's logic and holding.

**AFFIRMED.**