******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DOUGLAS DAVIS *v.* COMMISSIONER
OF CORRECTION
(SC 19286)

Rogers, C. J., and Palmer, Zarella, McDonald, Espinosa and Robinson, Js.

*Argued March 25—officially released November 17, 2015*

*Naomi T. Fetterman*, with whom was *Aaron J. Romano*, for the appellant (petitioner).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Adrienne Maciulewski*, deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

ROBINSON, J. The sole issue in this certified appeal is whether a criminal defendant received the effective assistance of counsel when, at sentencing, defense counsel agreed with the prosecutor's recommendation that the trial court should impose the maximum sentence allowed under a plea agreement even though that agreement contained a provision entitling defense counsel to advocate for a lesser sentence. The petitioner, Douglas Davis, appeals, upon our grant of his petition for certification,[1] from the judgment of the Appellate Court affirming in part the habeas court's denial of his amended petition for a writ of habeas corpus.[2] *Davis* v. *Commissioner of Correction*, 147 Conn. App. 343, 358–63, 81 A.3d 1226 (2013). On appeal, the petitioner contends that the Appellate Court improperly concluded that the habeas court properly applied *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to his ineffective assistance claim, and thereby required him to prove that he was prejudiced by defense counsel's deficient performance. The petitioner argues that, because a complete breakdown in the adversarial process occurred, his claim instead is controlled by *United States* v. *Cronic*, 466 U.S. 648, 655–57, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), and prejudice should be presumed. We agree with the petitioner and, accordingly, reverse in part the judgment of the Appellate Court and remand the case for a new sentencing hearing.

The record reveals the following facts and procedural history. The petitioner was charged with murder in violation of General Statutes § 53a-54a and carrying a pistol without a permit in violation of General Statutes § 29-35. Defense counsel was appointed to represent the petitioner, and he negotiated for a plea to manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a and carrying a pistol without a permit in violation of § 29-35. The plea agreement stated that the petitioner would receive a total effective sentence of between twenty and twenty-five years imprisonment and that the state and the petitioner would have the right to argue for an appropriate sentence within that range. When the trial court, *Damiani, J.*, accepted the petitioner's guilty plea, the court reminded the petitioner that defense counsel had "a right to argue" for a sentence beneath the twenty-five year cap. Thereafter, a presentence investigation (PSI) report was completed, which recommended a twenty-five year sentence.

At the petitioner's sentencing hearing, the trial court began by reciting the plea agreement's twenty year floor and twenty-five year cap, and reiterating that defense counsel had "a real right to argue" for the appropriate sentence. The trial court then stated that it was the "saddest thing" to sentence someone for killing another

human being because "that person's life is ruined" and no number of years will satisfy the victim's family. The trial court also commented on the prevalence of guns in New Haven, adding, "it's a very sad, sad situation."

After making these preliminary remarks, the trial court turned to the prosecutor, who noted that the trial court echoed the feeling of the state, and introduced the victim's family members. Five family members poignantly described their loss. Immediately thereafter, the prosecutor stated the following: "Needless to say, the state recommends twenty-five years to serve." Defense counsel immediately responded as follows: "Your Honor, *I agree with everything that everybody said so far, and I don't think there's anything left to say from my part.*" (Emphasis added.) Defense counsel said nothing else on the petitioner's behalf. The trial court then imposed the maximum sentence of twenty-five years imprisonment.

The petitioner subsequently filed a petition for a writ of habeas corpus. Following the appointment of habeas counsel, he filed an amended petition claiming ineffective assistance of counsel. During the habeas trial, only the petitioner and defense counsel testified. Defense counsel explained that, because the petitioner had told him he only had a few drug convictions, he had negotiated for the plea agreement under the assumption that he could rely on the petitioner's lack of a substantial criminal record at the sentencing hearing. Upon reviewing the PSI at the sentencing hearing, however, defense counsel learned that the petitioner had a much more extensive criminal history than had previously been insinuated. Defense counsel testified that, under these circumstances, he believed the twenty-five year sentence was satisfactory.

The habeas court subsequently denied relief, determining that the petitioner failed to prove that he was denied effective assistance of counsel pursuant to the two-pronged test set forth in *Strickland*. Under the first prong, the habeas court determined that defense counsel's performance was resoundingly deficient, deeming it "wholly unreasonable and inexcusable" and "a poster child example of what constitutes ineffective assistance of counsel." Under the second prong, however, the habeas court determined that the petitioner had not shown actual prejudice—that is, a reasonable probability that he would have received a different sentence but for defense counsel's conduct. Accordingly, the habeas court rendered judgment denying the amended petition. The petitioner subsequently filed a petition for certification to appeal, which the habeas court denied.

The petitioner then appealed to the Appellate Court, which concluded in relevant part that the habeas court properly determined that the petitioner failed to prove actual prejudice under *Strickland*. See *Davis* v. *Com-*

*missioner of Correction*, supra, 147 Conn. App. 363; see also footnote 2 of this opinion. Accordingly, the Appellate Court affirmed the judgment of the habeas court.[3] *Davis* v. *Commissioner of Correction*, supra, 363. This certified appeal followed. See footnote 1 of this opinion.

On appeal, the petitioner claims that defense counsel's agreement with the state's recommendation of the maximum sentence amounted to a complete breakdown in the adversarial process and, thus, pursuant to *United States* v. *Cronic*, supra, 466 U.S. 648, prejudice should be presumed in connection with his ineffective assistance of counsel claim.[4] The petitioner relatedly contends that defense counsel's agreement to the maximum sentence of twenty-five years cannot realistically be cast as a strategic decision. Specifically, the petitioner notes that his sentence already was capped at twenty-five years pursuant to the plea agreement, and that defense counsel had specifically bargained for, received, and advised the petitioner to accept an agreement containing a right to argue for less than the maximum sentence.

In response, the respondent, the Commissioner of Correction, disputes that defense counsel agreed with the prosecution's sentencing recommendation during the sentencing hearing. The respondent contends that defense counsel merely made a strategic decision to avoid engaging in argument given the heightened emotions in the courtroom, as well as the information already provided to the trial court in the PSI. The respondent asserts that defense counsel could not have said anything to make a difference in the trial court's sentencing and, therefore, defense counsel reasonably forfeited his right to argue. Citing *Strickland* v. *Washington*, supra, 466 U.S. 668, the respondent emphasizes the presumption of competence afforded to defense counsel's conduct.

We begin by setting forth the applicable standard of review. The issue of whether the representation that a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. Id., 698. As such, the question requires plenary review "unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Gonzalez* v. *Commissioner of Correction*, 308 Conn. 463, 470, 68 A.3d 624, cert. denied, U.S. , 134 S. Ct. 639, 187 L. Ed. 2d 445 (2013).

The sixth amendment provides that in all criminal prosecutions, the accused shall enjoy the right to the effective assistance of counsel. U.S. Const., amend. VI. This right is incorporated to the states through the due process clause of the fourteenth amendment. See U.S. Const., amend. XIV, § 1; *Gideon* v. *Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). *Strickland* and *Cronic* set forth the framework for analyzing ineffective assistance of counsel claims. Under the two-

pronged *Strickland* test, a defendant can only prevail on an ineffective assistance of counsel claim if he proves that (1) counsel's performance was deficient, and (2) the deficient performance resulted in actual prejudice. *Strickland* v. *Washington*, supra, 466 U.S. 687. To demonstrate deficient performance, a defendant must show that counsel's conduct fell below an objective standard of reasonableness for competent attorneys. Id., 688. To demonstrate actual prejudice, a defendant must show a reasonable probability that the outcome of the proceeding would have been different but for counsel's errors. Id., 694.

*Strickland* recognized, however, that "[i]n certain [s]ixth [a]mendment contexts, prejudice is presumed." Id., 692. In *United States* v. *Cronic*, supra, 466 U.S. 659–60, which was decided on the same day as *Strickland*, the United States Supreme Court elaborated on the following three scenarios in which prejudice may be presumed: (1) when counsel is denied to a defendant at a critical stage of the proceeding; (2) when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) when counsel is called upon to render assistance in a situation in which no competent attorney could do so. Notably, the second scenario constitutes an "actual breakdown of the adversarial process," which occurs when counsel completely fails to advocate on a defendant's behalf. Id., 657.

The United States Supreme Court revisited *Cronic* in the sentencing context in *Bell* v. *Cone*, 535 U.S. 685, 697, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). In *Bell*, counsel presented no mitigating evidence at a capital sentencing hearing and waived closing argument to avert rebuttal from the prosecution. Id. Counsel did, however, plead for the defendant's life in his opening statement and cross-examine the state's witnesses. Id. The court clarified that counsel's failure to advocate for the defendant during the sentencing proceeding must be "complete," rather than at "specific points," for there to be a complete breakdown in the adversarial process. Id. Because counsel did *something* during the sentencing hearing and gave a viable rationale to support his actions, the court ultimately concluded that *Cronic* did not apply. Id.

Various courts, in explaining the line that divides *Strickland* and *Cronic*, have likewise held that specific errors in representation, for which counsel can provide some reasonable explanation, are properly analyzed under *Strickland*. See, e.g., *United States* v. *Gooding*, 594 Fed. Appx. 123, 126 (4th Cir. 2014). Counsel's complete failure to advocate for a defendant, however, such that no explanation could possibly justify such conduct, warrants the application of *Cronic*. See, e.g., *Patrasso* v. *Nelson*, 121 F.3d 297, 304 (7th Cir. 1997). In the spirit of *Bell*, courts have drawn a distinction between "maladroit performance" and "non-performance"; *Scarpa* v.

*Dubois*, 38 F.3d 1, 15 (1st Cir. 1994), cert. denied, 513 U.S. 1129, 115 S. Ct. 940, 130 L. Ed. 2d 885 (1995); by applying *Cronic* in cases where counsel's conduct goes beyond "bad, even deplorable assistance" and constitutes "no representation at all . . . ." *Moss* v. *Hofbauer*, 286 F.3d 851, 861 (6th Cir.), cert. denied, 537 U.S. 1092, 123 S. Ct. 702, 154 L. Ed. 2d 639 (2002). Put differently, in ineffective assistance of counsel claims, prejudice may be presumed when counsel "wasn't really acting as a lawyer at all." *Johnson* v. *Nagle*, 58 F. Supp. 2d 1303, 1338 (N.D. Ala. 1999), aff'd, 256 F.3d 1156 (11th Cir. 2001).

*Cronic* nonetheless "provides a reviewing court with some difficulty in application"; *Rickman* v. *Bell*, 131 F.3d 1150, 1156 (6th Cir. 1997), cert. denied, 523 U.S. 1133, 118 S. Ct. 1827, 140 L. Ed. 2d 962 (1998); and represents an "unsettled area of federal constitutional law." *Kaddah* v. *Commissioner of Correction*, 105 Conn. App. 430, 444 n.6, 939 A.2d 1185, cert. denied, 286 Conn. 903, 943 A.2d 1101 (2008). For example, no consensus exists whether counsel's mere silence or lack of advocacy at a sentencing hearing amounts to a complete breakdown in the adversarial process. Some courts have applied *Strickland* in these situations, describing counsel's conduct as strategic under the circumstances. See, e.g., *Gonzalez* v. *United States*, 722 F.3d 118, 136 (2d Cir. 2013); *Duncan* v. *Carpenter*, United States District Court, Docket No. 3:88-00992 (JTN) (M.D. Tenn. March 4, 2015); *Butler* v. *Sumner*, 783 F. Supp. 519, 520 (D. Nev. 1991). Other courts have rejected the notion that such conduct can ever be deemed strategic and applied *Cronic* instead. See, e.g., *Patrasso* v. *Nelson*, supra, 121 F.3d 304; *Tucker* v. *Day*, 969 F.2d 155, 159 (5th Cir. 1992); *Gardiner* v. *United States*, 679 F. Supp. 1143, 1145–46 (D. Me. 1988). Neither party briefed, nor did our independent research reveal, any decisions directly on point, in which defense counsel negotiated for a plea agreement with a given sentencing range, then *agreed* with the prosecutor's recommendation of the maximum sentence at the sentencing hearing.[5]

A closer look at the silence cases illustrating the division among the authorities in the sentencing context is nonetheless helpful. For example, the United States Court of Appeals for the Second Circuit appears to have applied *Strickland* when defense counsel "did little more than simply attend" a sentencing hearing for drug and bribery charges. *Gonzalez* v. *United States*, supra, 722 F.3d 136. The Federal District Court for the District of Nevada applied *Strickland* when defense counsel simply stated that "prison was not the place" for the defendant, but that he "[didn't] know what choice the [c]ourt ha[d]." (Internal quotation marks omitted.) *Butler* v. *Sumner*, supra, 783 F. Supp. 520. The Federal District Court for the Middle District of Tennessee also applied *Strickland* where, at a capital sentencing hear-

ing, counsel viewed sentencing as "hopeless," presented no mitigating evidence, and argued briefly and unpersuasively. *Duncan* v. *Carpenter*, supra, United States District Court, Docket No. 3:88-00992 (JTN). The court applied *Strickland*, but observed, "[i]f this is not 'complete' failure as required by *Cronic* . . . it comes as close to the line as any case could without crossing over it." Id. None of these cases involved an apparent agreement with the prosecutor.

Courts have also applied *Cronic*'s presumption of prejudice to cases involving defense counsel's silence or lack of advocacy at sentencing. See, e.g., *Patrasso* v. *Nelson*, supra, 121 F.3d 304; *Tucker* v. *Day*, supra, 969 F.2d 159; *Gardiner* v. *United States*, supra, 679 F. Supp. 1145–46. For example, the United States Court of Appeals for the Seventh Circuit applied *Cronic* when a prosecutor recommended the maximum sentence for attempted murder, to which defense counsel responded, "I have nothing." (Internal quotation marks omitted.) *Patrasso* v. *Nelson*, supra, 303. Because the defendant was "left without a defense at sentencing [and] without an opportunity to argue for a sentence less than the statutory maximum he received," counsel's performance "was so lacking that it invite[d] application of *Cronic* rather than *Strickland*." Id., 304.

Similarly, in *Gardiner* v. *United States*, supra, 679 F. Supp. 1145–46, the Federal District Court for the District of Maine applied *Cronic* when counsel did not present evidence and said nothing on behalf of his client at a sentencing hearing for drug crimes. The court determined that the argument that counsel's silence constituted a "strategic decision" was "at best labored and the result of a gross misperception and, at worst, fabricated out of thin air." Id., 1145. By doing nothing during the hearing, counsel ensured that the "very bleak picture" of a defendant, as painted by the state, "was the impression with which the [c]ourt would be left." Id., 1146.

Courts have also applied *Cronic* when counsel constructively agreed with the prosecution in the absence of any reasonable explanation for doing so. For instance, the United States Court of Appeals for the Tenth Circuit applied *Cronic* when counsel's argument at a sentencing hearing stressed the brutality of the crime, how difficult the defendant was, and the overwhelming nature of the evidence against him. See *Osborn* v. *Shillinger*, 861 F.2d 612, 628 (10th Cir. 1988) (noting that sentencing proceeding was "almost totally [nonadversarial]"). Similarly, the United States Court of Appeals for Ninth Circuit applied *Cronic* when counsel admitted in his closing argument that no reasonable doubt existed as to whether the defendant perpetrated the bank robbery or intimidated the bank tellers, thereby conceding two critical elements of the prosecution's case. See *United States* v. *Swanson*, 943 F.2d

1070, 1075 (9th Cir. 1991).

When counsel's agreement with the prosecution is reasonably calculated to further a defendant's interests, however, courts apply the *Strickland* test. The United States Supreme Court has held that prejudice could not be presumed when counsel conceded a defendant's guilt during the closing argument for a capital crime, with the hopes of persuading the jury not to impose the death penalty. See *Florida* v. *Nixon*, 543 U.S. 175, 191–92, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004). The Eleventh Circuit also applied *Strickland* when counsel candidly acknowledged to the jury that the prosecution had presented enough evidence to convict his client of one count of robbery, but only in an attempt to build enough credibility to defend his client against the second count. See *Darden* v. *United States*, 708 F.3d 1225, 1229–30 (11th Cir.), cert. denied, U.S. , 133 S. Ct. 2871, 186 L. Ed. 2d 922 (2013); see also *United States* v. *Thomas*, 417 F.3d 1053, 1057 (9th Cir. 2005) (counsel conceded guilt on one charge on which evidence was overwhelming to gain credibility for defending against more serious charges with greater penalties), cert. denied, 546 U.S. 1121, 126 S. Ct. 1095, 163 L. Ed. 2d 909 (2006). In each of these cases, counsel's "agreement" with the prosecution could conceivably have improved the defendant's overall position and was limited to subordinate issues, rather than the sole matter of contention. Apart from these differences, and their position outside the sentencing context, these cases simply show a willingness to apply *Cronic* when counsel agrees with the prosecution in a way that cannot reasonably be deemed to be in a defendant's interest.

With these precedents in mind, we now turn to the petitioner's claim that defense counsel's agreement to the maximum sentence, despite his express entitlement to advocate for a lesser sentence, constituted a complete breakdown in the adversarial process calling for *Cronic*'s presumption of prejudice. Because our surveyed cases applying *Strickland* have not involved defense counsel's agreement with the prosecution on the sole issue in contention, and our surveyed cases applying *Cronic* have identified a complete breakdown in the adversarial process even *without* such an agreement, we are persuaded that *Cronic* governs the petitioner's claim.[6] We further note that *Bell* v. *Cone*, supra, 535 U.S. 697, does not bar the application of *Cronic* in the present case, because, unlike *Bell*, the defense counsel in the present case not only did nothing to advocate for the petitioner at the sentencing hearing, but he also went a step further by agreeing with the state's recommendation of the maximum sentence.

Our conclusion that a complete breakdown in the adversarial process occurred, triggering *Cronic*, begins with our initial determination, based on our review of the record, that defense counsel agreed with the prose-

cutor's recommendation. At sentencing, the trial court began by lamenting the tragedy of the case and commenting on the prevalence of gun violence in New Haven. The trial court turned to the prosecutor, who noted that the court echoed the feeling of the state and then introduced the victim's family members. The victim's father, two sisters, cousin, and another family member each took turns poignantly describing their loss. When the last family member finished, the prosecutor said, "[n]eedless to say, the state recommends twenty-five years to serve." The trial court then turned to defense counsel, who immediately replied, "[y]our Honor, *I agree with everything that everybody said so far, and I don't think there's anything left to say from my part.* . . ." (Emphasis added.) Defense counsel made no other statements during the sentencing hearing, and later indicated his understanding that this constituted his chance to argue for a sentence of less than twenty-five years.

At the subsequent habeas trial, when defense counsel was asked to clarify what he had stated at the sentencing hearing, he explained, "that I agree with *everything that had been said thus far*, referring to the comments by the victim's family *and the comments of the state's attorney* because none of that was in dispute . . . ." (Emphasis added.) As the transcript reveals, the only comment made by the state, other than the general denunciation of violence in New Haven and the introduction of the victim's family members, was the twenty-five year recommendation immediately before defense counsel expressed his agreement.

The respondent contends that defense counsel was simply agreeing with the tragic consequences of the petitioner's actions and the sense of loss felt by the victim's family. We disagree. Defense counsel may have been acknowledging those discrete sentiments, but he also specifically referenced all of the comments of the prosecutor in explaining to what he had agreed during the sentencing hearing. Thus, defense counsel's agreement can only be understood as encompassing the prosecutor's comments, which, in this case, included the recommendation of a twenty-five year sentence.[7]

Defense counsel's testimony further demonstrates that, upon learning the true extent of the petitioner's criminal record and believing that twenty-five years was satisfactory under the circumstances, he capitulated to that recommendation. Defense counsel testified that the "slight possibility" that the petitioner would receive a sentence of less than twenty-five years "dissipated" at the sentencing hearing.[8] Defense counsel also testified several times that he believed twenty-five years was "satisfactory" to him and the "best" he could do under the circumstances.[9] Although defense counsel's statements may well refer to an after the fact satisfaction

with the outcome of the case, they also reveal his willingness to agree to the maximum sentence under the plea agreement at the time of sentencing. Thus, defense counsel's testimony supports the conclusion that, after being caught off guard by the petitioner's criminal record, he effectively resigned himself to a sentence of twenty-five years.

When viewed in more complete context, defense counsel's agreement with the prosecutor cannot realistically be characterized as a strategic decision properly analyzed under *Strickland*. Rather, defense counsel's conduct resembles the complete breakdown in the adversarial process that *Cronic* envisions. The petitioner's sentence was already capped at twenty-five years pursuant to the plea agreement and, thus, assenting to that sentence did nothing to advance the petitioner's interests.[10]

The trial court's acknowledgment of the range of sentencing options at multiple points during the hearing further undermines any "strategic" rationale for defense counsel's conduct. Even after the victim's father delivered a statement, the trial court had not yet decided on the maximum twenty-five years. In addressing the father's grief, the trial court stated, "when [the petitioner] comes out of jail after *twenty* or twenty-five years . . . ." (Emphasis added.) The trial court also reiterated the twenty year floor and twenty-five year cap at the beginning of the hearing and manifested some sympathy for the petitioner, noting that his life was already ruined and that the whole case was a "very sad, sad situation." When one of the victim's family members stated that the petitioner had not shown any remorse, the trial court corrected him by pointing to the petitioner's statement that he cannot forgive himself for what he did. The trial court also acknowledged defense counsel's right to argue several times, emphasizing that it was "real" at the beginning of the sentencing hearing. Defense counsel himself admitted at the habeas trial that his right to argue was meaningful.[11]

Despite this meaningful right to argue, defense counsel testified at the habeas trial that he chose instead to rely on the PSI to speak for itself on behalf of his client. The PSI, however, did nothing more than reiterate the prosecutor's recommendation. That is, the PSI contained only recommendations for the maximum twenty-five year sentence by the victim's family members and the investigating probation officer. Defense counsel acknowledged that sentencing courts rely heavily on PSI reports, referring to this tendency in justifying his inaction. The tendency for sentencing courts to rely on PSI reports, however, only further necessitated defense counsel's advocacy on the petitioner's behalf at the sentencing hearing. As the Seventh Circuit noted, in applying *Cronic*, defense counsel "had a role to play in this sentencing . . . ." *Patrasso* v. *Nelson*, supra,

121 F.3d 304.

The respondent, echoed by the dissent, maintains that defense counsel's decision was strategic because the trial court was fully aware of all of the facts and any argument would have been perfunctory and possibly harmful in the emotional setting. The respondent and the dissent rely on defense counsel's testimony that the hearing was "emotion-packed," and that the trial court was "fully aware" of the petitioner's background.[12] This explanation, however, is unreasonable in light of the twenty-five year cap, the right to argue in the plea agreement, the trial court's modest sympathy for the petitioner, the fact that the trial court expressly stated that it had not yet made its decision and had contemplated between twenty and twenty-five years, and the PSI's twenty-five year recommendation. See *Tucker* v. *Day*, supra, 969 F.2d 159 (holding that defense counsel's reliance on court's familiarity with case at sentencing did not fulfill constitutional requirement that defendant be assisted by counsel at his sentencing hearing, otherwise, "[t]aken to its logical conclusion, this argument would permit the state to deny counsel to [the defendant] at . . . sentencing").[13] Defense counsel's agreement with the prosecutor under these circumstances differs vastly from simply forgoing cross-examination of certain witnesses or holding the state to its burden of proof, contrary to the respondent's assertions.

The respondent and the dissent emphasize the well established principle that courts must, in examining a claim of ineffective assistance of counsel, be highly deferential to counsel's decisions. As the Federal District Court for the District of Maine has aptly stated, however, we "need not defer in cases such as this one where the decision in effect deprives a defendant of counsel . . . ." *Gardiner* v. *United States*, supra, 679 F. Supp. 1146. In the present case, the petitioner has overcome the presumption that defense counsel's agreement with the prosecution "might be considered sound trial strategy." (Internal quotation marks omitted.) *Strickland* v. *Washington*, supra, 466 U.S. 689.

We note that defense counsel's agreement might well be characterized as strategic if the record revealed that counsel feared that arguing for his client might lead the court to reject the plea deal altogether. See *United States* v. *Lewis*, 633 F.3d 262, 270 (4th Cir. 2011) (stating that district courts always have authority to accept or reject any plea agreement); see also *State* v. *Garvin*, 242 Conn. 296, 315, 699 A.2d 921 (1997) (*McDonald, J.,* concurring and dissenting). However, we find nothing in the record indicating or alluding to this concern.[14] On the contrary, defense counsel expressed his confidence that the trial court would *not* reject the plea agreement upon reviewing the petitioner's criminal record in the PSI. Defense counsel stated that the petitioner's crimi-

nal record "couldn't have hurt him" at sentencing and "only could have helped him," had it not been so extensive, because of the twenty-five year cap. The trial court's comments also belie the unlikelihood of this outcome. The trial court reiterated several times—at the plea colloquy, at the beginning of the sentencing hearing, and after the victim's father's statement—that the plea agreement had a floor and cap, with the right to argue for the appropriate sentence.

By not only failing to advocate for the petitioner at his sentencing hearing, but also agreeing with the prosecutor's recommendation of the maximum sentence, defense counsel "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing . . . ." *United States* v. *Cronic*, supra, 466 U.S. 659. As the United States Supreme Court stated, "[t]he defendant has a *legitimate interest* in the *character of the procedure* which leads to the imposition of sentence even if he may have no right to object to a particular *result* of the sentencing process." (Emphasis added.) *Gardner* v. *Florida*, 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977). Thus, we conclude that defense counsel's forfeiture of his right to argue for a lesser sentence to agree with the prosecutor's recommendation warrants application of *Cronic*. Prejudice may therefore be presumed and the petitioner has asserted a valid claim of ineffective assistance of counsel.

The judgment of the Appellate Court is reversed only with respect to the petitioner's claim of ineffective assistance of counsel at sentencing, and the case is remanded to that court with direction to reverse the judgment of the habeas court on that claim and to remand the case to the habeas court with direction to grant the petition for a writ of habeas corpus on that claim, to vacate the petitioner's sentence, and to order a new sentencing hearing.

In this opinion ROGERS, C. J., and PALMER and McDONALD, Js., concurred.

[1] We granted the petitioner's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the habeas court correctly determined that, under *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and its progeny, prejudice could not be presumed when, at sentencing, defense counsel stated only that he agreed fully with the state and made no argument on behalf of the petitioner, even though the plea agreement permitted the petitioner to argue for less than the maximum possible sentence of twenty-five years imprisonment?" *Davis* v. *Commissioner of Correction*, 311 Conn. 921, 86 A.3d 467 (2014).

[2] The petitioner also claimed that he was denied effective assistance based on defense counsel's failure to: "(1) investigate the petitioner's case, (2) adequately advise the petitioner throughout the pretrial and postplea stages, and (3) present mitigating evidence in pretrial negotiations . . . ." *Davis* v. *Commissioner of Correction*, 147 Conn. App. 343, 345, 81 A.3d 1226 (2013). These claims were rejected by both the habeas court and the Appellate Court. Id. These additional claims are not, however, at issue in the present appeal. See footnote 1 of this opinion.

[3] Judge Alvord authored a concurring opinion, which stated that defense counsel's performance was not deficient because defense counsel had "carefully assessed the volatile situation and made the conscious decision to forgo argument for a lesser sentence . . . ." *Davis* v. *Commissioner of*

*Correction*, supra, 147 Conn. App. 365.

[4] The petitioner originally made fourteen separate claims of ineffective assistance of counsel before the habeas court—none of which invoked *Cronic* by name. *Davis* v. *Commissioner of Correction*, supra, 147 Conn. App. 347. Although this court recently stated that ineffective assistance claims raised for the first time during a habeas appeal are not subject to review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), unless they arise out of the actions or omissions of the habeas court itself; see *Moye* v. *Commissioner of Correction*, 316 Conn. 779, 787, 114 A.3d 925 (2015); the petitioner in the present case did not raise any *new claim* on appeal, he merely refined his argument as to the same alleged deficiency. The petitioner cited *Strickland* in his habeas petition. *Strickland* introduces the concept of presumption of prejudice, which *Cronic* later refines. See *Strickland* v. *Washington*, supra, 466 U.S. 692 ("[i]n certain . . . contexts [relating to the sixth amendment to the United States constitution], prejudice is presumed"). Thus, the petitioner did not introduce an entirely new theory on appeal, obviating our concerns about fairness to the trial court and opposing party. See *Moye* v. *Commissioner of Correction*, supra, 789; cf. *Johnson* v. *Commissioner of Correction*, 288 Conn. 53, 58, 951 A.2d 520 (2008) (declining review when, with regards to sentencing court's calculation of defendant's presentence confinement credit, defendant argued due process and equal protection to habeas court and ex post facto to Appellate Court), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014).

[5] In a California case, at a sentencing hearing on a rape conviction, counsel failed to argue for less than the eleven year maximum recommended by the prosecution, although the plea agreement had a sentencing range of between eight and eleven years. *People* v. *Jacobs*, 220 Cal. App. 4th 67, 74, 162 Cal. Rptr. 3d 739 (2013). After the prosecution presented aggravating evidence, counsel stated, "I think the offer . . . indicated was [eleven] years," which was "the reason he [pleaded]." (Internal quotation marks omitted.) Id. The court applied *Strickland*, but noted specifically that the parties did not argue for the application of *Cronic*. Id., 76–77.

[6] The dissent accurately notes that the *Cronic* rule was not applied in *Cronic* itself. This nuance, however, is inapposite to the present case because the court, after listing the three circumstances in which prejudice may be presumed, held that prejudice could not be presumed with respect to the *third* category. *United States* v. *Cronic*, supra, 466 U.S. 662. Only the second category is at issue in the present case. In *Cronic*, the court described the categories as: (1) when counsel is denied at a critical stage of the proceeding; (2) when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) when counsel is called upon to render assistance in a situation in which no competent attorney could do so. Id., 659–60. Turning to the facts of that case, the Supreme Court stated: "While the [United States] Court of Appeals [for the Tenth Circuit] purported to apply a standard of reasonable competence, it *did not indicate* that there had been an *actual breakdown of the adversarial process* during the trial of this case. Instead it concluded that the *circumstances surrounding the representation* of [the] respondent mandated an inference that counsel was *unable to discharge his duties*." (Emphasis added.) Id., 657–58.

[7] With no other comments, we cannot read this statement in any other way.

[8] During the habeas trial, defense counsel offered the following testimony: "I think at the time that we entered the plea I may not have been entirely familiar with the extent of his criminal record, so I remember at the sentencing hearing, once having . . . well, or prior to it, having reviewed the [PSI], that his criminal record was a lot more extensive than I originally had anticipated, that was a problem, and secondly, that the impact of the victim's family at the sentencing hearing was quite substantial in their grief and their loss and it was very persuasive to the court under the circumstances. So my intention when we entered the plea with a floor and a cap was the hopes that I could argue lack of a substantial criminal record, which turned out to be much more than I had anticipated . . . . "

Defense counsel also offered the following testimony on cross-examination by counsel for the respondent at the habeas trial:

"Q. . . . Did you have a notion about where [the trial court] was going to come in at sentencing based upon your . . . .

"A. Well, I knew it was going to be between twenty and twenty-five years. I thought that there may be some slight possibility he would give him something less than the twenty-five. As it turned out, that likelihood sort of dissipated during the course of the sentencing hearing."

[9] Specifically, defense counsel testified that "anybody that's doing twenty-five years in prison, I can't say that I consider it to be a victory, but certainly I think it's the best outcome he could have hoped for under the circumstances."

Defense counsel further testified that "the bottom line is . . . the twenty-five year sentence under the circumstances was pretty good and anything we could have gotten less was gravy. . . . [M]y attitude was, look, if he can get twenty-five with a manslaughter plea based on this set of facts, he's done as good as he can conceivably do in my experience, which I would consider vast. So, you know, twenty-five would have been as good as we could do. If we could get any lower, all the better. As it turned out, that didn't happen and it was not likely, but the twenty-five was certainly satisfactory to me. And I'm not saying [that] it should be satisfactory to [the petitioner], but that's as good as he could have done and he could have done a lot worse, quite frankly."

[10] Acquiescing to a prosecutor's recommendation of the maximum sentence may actually harm a defendant's chances of receiving a lesser sentence even *more so* than if defense counsel had said nothing at all. It is a powerful image when defense counsel, a supposed zealous advocate for the defendant, agrees to the prosecutor's sentencing recommendation immediately before the judge makes his or her decision. See *Osborn* v. *Shillinger*, supra, 861 F.2d 629 (applying *Cronic* when defense counsel "turned against" his client, abandoned his duty of loyalty, and "effectively join[ed] the state"). Defense counsel's agreement, in lieu of advocacy, could well have dispelled any hesitation the trial court may have had about imposing the maximum sentence.

[11] During the habeas trial, the following colloquy occurred between defense counsel and counsel for the petitioner:

"Q. Had you been before [this particular judge] before?

"A. Many times.

"Q. Okay. If [this judge] said he was going to give you the right to argue, did he pretty much mean that?

"A. Yes.

"Q. He didn't just say it even though he had no intention?

"A. . . . *This was a meaningful right to argue for less*. That was agreed. He agreed to listen to an argument and to consider it. There are times when he'll say, you know, I'll give you a right to argue for less and tell the defendant that it's highly unlikely he'll give him less. *This* [*was*] *not one of those cases*." (Emphasis added.)

[12] Specifically, at the habeas trial, defense counsel testified as follows: "[At sentencing] there was a large crowd of people, most of whom were related to the victim . . . . It was one of those very emotion-packed hearings . . . . The judge was clearly affected by that fact and sympathetic to the family and sympathetic to the victim. He was fully aware of what the [petitioner's] record was and his background was through the [PSI]. None of the facts, as presented by either the victim's family or the state, were in dispute, and so at that point the only thing I could have said would have been perfunctory and under the circumstances probably would have elicited more of a negative response . . . ."

[13] By not doing so, defense counsel reinforced the oft perceived notion that public defenders are "in cahoots" with the state. See, e.g., *State* v. *Stewart*, Ohio Court of Appeals, Docket No. 02CA29, (Ohio App. September 5, 2003).

[14] When asked by counsel for the petitioner at the habeas trial whether the trial court could have possibly "give[n] [the petitioner] more" after reviewing the PSI if it was unfavorable, the petitioner's trial counsel did not appear to register this as a concern:

"Q. . . . [A]fter he [pleaded] and they ordered the PSI and he knew that you might be able to argue for less, did you tell him that the judge could possibly give him more after the PSI if it wasn't favorable?

"A. More than what?

"Q. Or rather give him the maximum amount that [the plea agreement] said rather than . . . .

"A. Absolutely. Yeah."