**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

           v.

CALVIN THOMAS,
           *Defendant-Appellant.*

No. 03-56750

D.C. Nos.
CV-02-00179-RT
CR-96-00006-RT

OPINION

Appeal from the United States District Court
for the Central District of California
Robert J. Timlin, District Judge, Presiding

Argued and Submitted
June 7, 2005—Pasadena, California

Filed August 3, 2005

Before: Betty B. Fletcher, Pamela Ann Rymer, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Rymer;
Concurrence by Judge B. Fletcher

9077

**COUNSEL**

Gary P. Burcham, San Diego, California, for defendant-appellant Calvin Thomas.

Alka Sagar, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee the United States.

**OPINION**

RYMER, Circuit Judge:

Calvin Thomas appeals the denial of his 28 U.S.C. § 2255 motion to vacate, set aside, or correct his federal criminal convictions for bank robbery, Hobbs Act robbery, assault on a federal officer, and gun charges in connection with these offenses. The issue is whether prejudice should be presumed under *United States v. Cronic*, 466 U.S. 648 (1984), on account of trial counsel's concession of Thomas's guilt on the Hobbs Act robbery charge without consulting Thomas or obtaining his consent, or instead must be proved under *Strickland v. Washington*, 466 U.S. 668 (1984). The district court found that counsel's statements were part of a trial strategy to make his challenge to other charges more credible, and did not constitute abandonment. It held that *Strickland*, rather

than *Cronic*, applies, and concluded that Thomas had made no showing of a reasonable probability that the outcome of the trial would have been different absent counsel's statements to the jury. We agree, and affirm.

I

Two robberies occurred on consecutive days in February 1996, the first of United California Savings Bank in Riverside, and the second of a United Parcel Service (UPS) office in Riverside. Three African-American males driving a blue Suzuki Samurai were involved in both. FBI Agent Mark Enyeart happened to be driving by the UPS office when the three men emerged from robbing that facility; he saw them, thought they looked suspicious, and followed the Suzuki. The robber in the back opened the rear flap and fired shots at Enyeart. A high speed chase ended up at the house of Cynthia Wright, an acquaintance of Thomas. Eventually the robbers were driven out of the house, and were identified as Thomas, Zelos Fields, and Reginald Paris. They left behind a 9-millimeter pistol and $800 inside a sock. Forensic testing matched the gun with shell casings found on the street where the shots were fired at Enyeart.

Indictments were returned against Thomas, Fields and Paris. Paris pled guilty and agreed to testify against Thomas and Fields, who were tried together. In his opening statement as well as in closing argument, Thomas's counsel, John Aquilina, indicated that he was not contesting Thomas's participation in the UPS robbery. Although Aquilina recalls having told Thomas that he intended to focus on the other charges, he does not remember consulting with Thomas or obtaining his consent to concede.

At trial, Paris testified that he drove a blue Suzuki Samurai to pick up Fields and Thomas before both robberies. Thomas showed him the 9-millimeter pistol, which Fields gave Paris to use to control people inside the facilities. A customer at the

bank identified Thomas as one of the robbers who jumped over the counter to get money from the tellers, and a bystander also identified him and Fields, describing Thomas accurately as shorter and lighter-skinned. After leaving the UPS office, Thomas dropped some of the money, which he bent down to pick up. Paris testified that Thomas sat in the front seat of the Suzuki and Fields in the back. A UPS customer identified Thomas as one of the robbers; a bystander testified that the man who was noticeably shorter and younger looking than the other two, with shorter hair, got into the back and was looking down the street as the Suzuki drove off. This description matches Thomas's appearance.

Enyeart testified that Paris got in the driver's side while Fields held the door open for Thomas, who had reached down to pick something up before getting into the rear seat. Enyeart identified Thomas as the one who fired at him. The agent followed the Suzuki to Wright's apartment. After the three surrendered, Wright identified Thomas and Fields.

The jury found Thomas guilty on all six counts. He appealed both his conviction and sentence. We affirmed the conviction, but remanded for resentencing which we later upheld.

Thomas then filed a § 2255 motion pressing the ineffective assistance of counsel claim that he pursues on appeal. The district court held an evidentiary hearing at which Thomas and Aquilina testified. The court found that Aquilina's conduct was not per se prejudicial, his statements were part of a trial strategy to enhance the effectiveness of his arguments on the bank robbery and firearms charges, and that regardless, there is no reasonable probability that the outcome of the trial would have been different given the substantial evidence from law enforcement witnesses, civilian witnesses, and Thomas's coconspirator about his involvement in the UPS robbery.

Thomas has timely appealed.

## II

### A

**[1]** Ineffective assistance of counsel claims are governed by the familiar, two-part test of *Strickland* under which a defendant must show that counsel's representation fell below an objective standard of reasonableness, and that any deficiencies in counsel's performance were prejudicial. *Strickland*, 466 U.S. at 688, 690, 692. Both deficient performance and prejudice are required before it can be said that a conviction (or sentence) "resulted from a breakdown in the adversary process that render[ed] the result [of the proceeding] unreliable" and thus in violation of the Sixth Amendment. *Id.* at 687.

**[2]** In this case, we assume that counsel's concession of guilt without consultation or consent is deficient.[1] *See Florida v. Nixon*, 125 S. Ct. 551, 560, 561 (2004) (observing that "[a]n attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy," and that counsel was obliged to explain proposed trial strategy to the defendant) (quoting *Strickland*, 466 U.S. at 688); *Strickland*, 466 U.S. at 688 (noting counsel's duty to consult with the defendant on important decisions). The question is whether Thomas was prejudiced, presumptively or actually.

**[3]** To prevail on *Strickland*'s prejudice prong, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[1]As *Strickland* instructs, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Ordinarily prejudice must be proved, but it is presumed in limited circumstances that are "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *See Cronic*, 466 U.S. at 658; *Strickland*, 466 U.S. at 692. *Cronic* identified several such situations, including if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. Thomas argues that this is such a case because Aquilina's concession of guilt was a completely unreasonable tactic that resulted in an actual breakdown in the adversarial process.

**[4]** The Supreme Court has twice revisited *Cronic* in ways that shed light on Thomas's claim. First, in *Bell v. Cone*, 535 U.S. 685, 697 (2002), the Court emphasized that *Cronic*'s exception for failing to test the prosecution's case applies when the attorney's failure to oppose the prosecution goes to the proceeding as a whole — not when the failure occurs only at specific points in the trial.[2] Then, in *Florida v. Nixon*, the Court considered a situation very similar to Thomas's. Nixon's counsel made a strategic decision to concede Nixon's commission of murder in the guilt phase of a capital case, and to concentrate the defense on saving Nixon's life in the penalty phase. There was overwhelming evidence that Nixon had

---

[2]The Court elaborated:

> When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said "if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, *supra*, at 659, 104 S. Ct. 2039 (emphasis added). Here, respondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, this difference is not of degree but of kind.

535 U.S. at 696-97

committed the murder. Counsel tried to explain his strategy to Nixon, but Nixon was unresponsive and neither approved nor disapproved it. The Florida Supreme Court thought that counsel's concession was the " 'functional equivalent of a guilty plea' in that it allowed the prosecution's guilt-phase case to proceed essentially without opposition," and thus held that it made counsel's performance presumptively inadequate without the defendant's affirmative acceptance. *Nixon*, 125 S. Ct. at 559 (quoting *Nixon v. Singletary*, 758 So.2d 618, 622-24 (Fla. 2000)). The United States Supreme Court disagreed with the premise that counsel's trial concession was the same as a guilty plea. It explained that despite counsel's concession, Nixon still had the rights to which he was entitled at trial — to have the prosecution prove the elements of the offense beyond a reasonable doubt by competent, admissible evidence; to cross-examine witnesses; to exclude prejudicial evidence; and to appeal evidentiary or instructional errors. *Id.* at 560-61. Having determined that counsel's concession strategy was not the functional equivalent of a guilty plea, the Court held that the Florida court's contrary conclusion led it mistakenly to apply the presumption of prejudice that *Cronic* "reserved for situations in which counsel has entirely failed to function as the client's advocate." *Id.* at 561.

**[5]** Thomas argues that *Nixon* is distinguishable based on the Court's statement that "[a]lthough such a concession [of guilt] in a run-of-the-mine trial might present a closer question, the gravity of the potential sentence in a capital trial and the proceeding's two-phase structure vitally affect counsel's strategic calculus." *Id.* at 562. He points out that in this case there was no bifurcated sentencing scheme and no affirmative defenses or lesser-included offenses. While true, Thomas's counsel nevertheless faced problems similar to Nixon's. There was overwhelming evidence that Thomas participated in the UPS robbery — he was, in effect, caught red-handed — and counsel, defending Thomas against not one but six charges,

saw a need to concentrate the defense on those counts that carried the stiffest penalties.[3]

**[6]** Thomas also relies on our opinion in *United States v. Swanson*, 943 F.2d 1070 (9th Cir. 1991), which was a bank robbery case in which counsel argued that the evidence against the defendant was overwhelming and that he was not going to insult the jurors' intelligence by trying to raise a reasonable doubt about whether Swanson had perpetrated the robbery or whether intimidation was proved. *Id.* at 1071, 1074. There, we applied *Cronic* because counsel's concession concerned the only factual issues in dispute on the only count that was charged. *Id.* at 1074. The government had also failed to identify any strategy that could justify counsel's betrayal of his client. *Id.* at 1075. Unlike Swanson, Thomas was tried on multiple counts, and counsel decided to focus on the charges on which Thomas had a chance. As we recognized in *Swanson*, "in some cases a trial attorney may find it advantageous to his client's interests to concede certain elements of an offense or his guilt of one of several charges." *Id.* at 1075-76; *see also Anderson v. Calderon*, 232 F.3d 1053, 1087-90 (9th Cir. 2000) (holding that *Swanson* and *Cronic*'s presumption of prejudice does not apply where trial counsel conceded that defendant murdered the victim but asked the jury to convict him of first-degree murder rather than felony murder in order to avoid eligibility for the death penalty), *overruled on other grounds by Osband v. Woodford*, 290 F.3d 1036 (9th Cir. 2002); *United States v. Holman*, 314 F.3d 837, 839 n.1, 840-41 (7th Cir. 2002) (holding that trial counsel's concession of defendant's guilt to one of several charges in order to enhance his credibility in arguing against conviction on other charges is a reasonable trial strategy and not susceptible to *Cronic*'s

---

[3]The firearms charges carried mandatory consecutive sentences of five years, twenty years and twenty years. Thomas was in fact sentenced to 60 months on one of the firearms counts and to 240 months each on the other two, to be served consecutively to one another and to the sentence on the remaining counts.

presumed prejudice analysis). As the district court found, this is such a case.

**[7]** In sum, there is no suggestion that Aquilina did not fully and carefully prepare Thomas's defense. He had a sensible reason for not contesting Thomas's participation in the UPS robbery: it was, for all practical purposes, incontestible, and he believed that doing so would enhance his credibility on counts where the evidence was somewhat less clear and the penalties significantly greater.[4] Given the multiple charges that Thomas faced, Aquilina could rationally decide to focus on the charges that were more defensible and consequential. Aquilina's concession was not the functional equivalent of a guilty plea, nor did it abandon all meaningful adversarial testing of the prosecution's case, such that it would be *Cronic* error. His failure to consult and obtain consent in and of itself does not render Aquilina's strategic decision presumptively prejudicial. The government was put to its burden of proving Thomas's guilt beyond a reasonable doubt on all charges, and counsel by no means entirely failed to serve as his advocate. Accordingly, counsel's conduct is subject to *Strickland*'s performance and prejudice requirements.

---

[4]Thomas suggests in reply that there was no practical advantage to be gained by conceding guilt as to the UPS robbery because the government pursued an aiding and abetting theory at trial. However, mere participation in the UPS robbery would not be sufficient to sustain a conviction on the count charging assault on a federal officer, or on the § 924(c) counts, which require proof that the defendant, in addition to being a participant, used or aided and abetted the use or carrying of a firearm. *See, e.g.*, *United States v. Bancalari*, 110 F.3d 1425, 1429-30 (9th Cir. 1997) (holding that to be guilty of aiding and abetting under § 924(c), the defendant must have directly facilitated or encouraged use of the firearm; "mere presence at the scene of the crime and knowledge that the crime is being committed is not enough"). Thomas was charged with aiding and abetting each of the firearms crimes, not with aiding and abetting the robberies.

B

Thomas argues that even if *Strickland* applies, his counsel's performance was prejudicial for two reasons. First, he maintains there was conflict among witnesses other than Enyeart and Paris as to whether Thomas was present during the UPS robbery. Any such conflict is immaterial, however, given Enyeart's testimony that he followed Thomas (whom he identified as the robber who got into the rear of the blue Suzuki) to Wright's apartment, from which Thomas subsequently emerged with the other two robbers.

**[8]** Second, Thomas suggests that Aquilina's concession that he participated in the UPS robbery effectively conceded his participation in both robberies given percipient witness testimony that each robbery was perpetrated by black males and Paris's testimony that the same two persons accompanied him during both robberies. Paris was severely impeached, however, and there was inconsistency among the witnesses as to how many robbers were present at the UPS office and who was present at the bank. In any event, there is no reasonable probability that, had Aquilina not failed to contest Thomas's participation in the UPS robbery, the jury would not have convicted him of the remaining charges. Witnesses testified that Thomas stood out from the other two bank robbers because he was noticeably shorter and had lighter skin and shorter hair; Enyeart testified that Thomas was the UPS robber who shot at him; and there was evidence that Thomas handed Paris the firearm that Paris carried in both robberies, thus aiding and abetting its use. Accordingly, Thomas has not shown a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

III

Thomas also asks us to certify as an issue for appeal whether Aquilina's concession of guilt to the UPS robbery

denied him due process in violation of *Boykin v. Alabama*, 395 U.S. 238 (1969). We decline to do so, as he cannot make a substantial showing of the denial of a constitutional right given *Nixon*. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

AFFIRMED.

---

B. FLETCHER, Circuit Judge, with whom FISHER, Circuit Judge, joins, concurring:

Our affirmance of Thomas's conviction should not be read as condoning his attorney's conduct in this case. On the contrary, Thomas's attorney abdicated one of defense counsel's most basic responsibilities: to consult with his client about important decisions relating to the representation. *See Florida v. Nixon*, 125 S. Ct. 551, 560 (2004); *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

While a carefully tailored concession can be a shrewd trial tactic in certain cases, it is entirely inappropriate for an attorney to make such a concession without prior discussion with the client. Consultation is vital not only to inform the client about his lawyer's proposed course of action, but also (more importantly) to provide the defendant with an opportunity to object to any contemplated concessions. In the ordinary representation, an attorney should obtain his client's express consent to a strategy conceding guilt (or any essential element thereof) on any charge or charges; in the unusual circumstance where consent is not possible (as in *Nixon*, where the defendant exhibited "constant resistance to answering inquiries put to him by counsel and court"), the attorney must at least consult the client in advance in order for the representation to satisfy the constitutional baseline of adequate advocacy. *See Nixon*, 125 S. Ct. at 561.

For purposes of evaluating *Strickland*'s incompetence-of-counsel prong, we therefore must draw a firm line that any counsel who makes concessions of guilt not previously discussed with the client is incompetent. It is deficient performance for an attorney to concede his client's guilt without prior consultation with the client, even where the concession relates to one charge out of several, and even where evidence of guilt is strong.

Because Thomas has not satisfied the prejudice prong of the *Strickland* test, relief here is foreclosed. Nonetheless, it is worth noting that, like Nixon's attorney, counsel for Thomas "was obliged to . . . explain his proposed trial strategy" to his client, 125 S. Ct. at 561; having failed to do so, the lawyer performed deficiently. With this understanding, I concur in Judge Rymer's opinion affirming the judgment.