# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) ) | No. 72001-5-I |
| v. | ) ) | UNPUBLISHED OPINION |
| ERIC SLANE, | ) ) | |
| Appellant. | ) ) | FILED: January 19, 2016 |

DWYER, J. — Eric Slane appeals multiple felony and misdemeanor convictions of malicious mischief and a conviction of bail jumping. He contends that he was deprived of his constitutional due process right to have a jury determine each element of the crime beyond a reasonable doubt when his attorneys argued, over his objection, that he committed the acts underlying the charges. He further claims that because his attorneys pursued a strategy that he disagreed with, he was deprived of his constitutional right to counsel. But the jury was required to find every element of the charged crimes proved beyond a reasonable doubt in order to convict Slane, and Slane's counsels' strategy did not relieve the State of its burden of proof. Slane entered a plea of not guilty, and his attorneys made sound tactical decisions consistent with the objective of his plea and subjected the State's case to meaningful adversarial testing. Slane

fails to establish a violation of his right to due process or his right to the effective assistance of counsel. We affirm.

I

In the early morning hours of August 26, 2011, police responded to reports that the tires of more than a dozen vehicles parked along the same road in a north Seattle residential neighborhood had been slashed.[1] An owner of one of the vehicles saw a man wearing dark clothing and a white hat crouched by a vehicle plunging a knife into a tire. Approximately an hour after the police first responded to the scene, a police officer noticed a man hiding in the bushes near the vehicles. The man, later identified as Eric Slane, was wearing dark clothing and dropped a white hat as he emerged from the bushes. He was carrying two folding knives.

Slane lived in a group home on the same street where the damage occurred. He told the police officer that he heard a commotion and came outside to investigate. Slane's vehicle, parked along the same street, was unharmed. Video surveillance footage showed a man wearing dark clothing and a white hat next to one of the vehicles that sustained damage.

Based on this August 2011 incident, and on Slane's failure to appear at a July 2013 court hearing, the State charged Slane with two felony counts of malicious mischief in the second degree, five misdemeanor counts of malicious mischief in the third degree, and one count of bail jumping. Although the State

---

[1] Another vehicle parked on a driveway on the same street sustained a different type of damage during the incident. The rear window of that vehicle was shattered and inside the vehicle was an unbroken bottle of liquid that appeared to contain urine.

initially filed charges in December 2011, trial was delayed for various reasons, including questions regarding Slane's competency.[2]

For several months before the April 2014 trial, it was clear that Slane's attorneys planned to raise defenses to all charges based on Slane's mental health. A few weeks before trial, when Slane's attorneys moved to sever the bail jumping charge from the malicious mischief charges, Slane strenuously opposed the motion. But he did not object when his attorneys confirmed that they would pursue a diminished capacity defense to the malicious mischief charges and the statutory affirmative defense of uncontrollable circumstances to the bail jumping charge.[3] During voir dire, Slane's counsel extensively questioned potential jurors about their attitude toward a mental health defense.

At the outset of opening remarks, one of Slane's attorneys told the jury that Slane was a paranoid schizophrenic who was experiencing a psychiatric crisis in the summer of 2011. Counsel claimed that because of his acute symptoms, Slane could not, and did not, form malicious intent. Slane interjected:

> I did not want this defense. They did this—they wouldn't— . . . let me come to court without this defense. It was the only way I could get in front of a jury. I need witnesses.

After he directed obscenities at counsel and argued with the court, Slane eventually allowed his counsel to continue her argument. Slane's attorney predicted that the State would present abundant evidence showing that Slane

---

[2] Following an evaluation by staff at Western State Hospital, the trial court determined that Slane was competent to stand trial.

[3] Under RCW 9A.76.170(2), it is an affirmative defense to bail jumping "that uncontrollable circumstances prevented the person from appearing or surrendering, and that the person did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear or surrender, and that the person appeared or surrendered as soon as such circumstances ceased to exist."

3

caused the damage at issue and explained that the defense did not intend to challenge that evidence. Instead, defense counsel argued that the jury should find Slane not guilty of the charges because he did not cause the property damage with malicious intent and because his mental health symptoms prevented him from appearing in court in July 2013.

Slane's attorneys presented evidence to support his defense, including the testimony of Slane's friend of several years, who testified about Slane's longstanding mental health issues and said that Slane told him he damaged the vehicles in order to discover what people were thinking about him. In addition, Slane's mental health case manager testified that Slane was increasingly disengaged in the summer of 2011. She also testified that a few days after the property damage incident, Slane was found non-responsive in the shower with the shower running. He was taken to the emergency room. Approximately two weeks later, based on concerns about Slane's deteriorating mental health, the case manager filed a petition for him to be evaluated for possible involuntary commitment.

Finally, defense counsel presented the only expert testimony in the case, that of forensic psychologist, Dr. Paul Spizman. Dr. Spizman testified that he believed that Slane was experiencing acute symptoms of his mental illness in September 2011 and that there was a "very distinct possibility" that Slane was unable to form the mental state of malice. Among other evidence, Dr. Spizman relied on video evidence showing Slane in the back of a police vehicle on the night of the incident in which he appeared to respond to internal stimuli. Dr.

Spizman also testified that Slane appeared to have decompensated in July 2013, around the time he failed to appear in court, and that his mental health symptoms could have interfered with his ability to appear.

Slane did not testify. When the defense counsel rested its case, Slane objected citing a constitutional "right not to rest" and his right to "competent counsel." The court explained to Slane that he would be removed from the courtroom if he continued to disrupt the proceedings. Slane responded by leaving the courtroom "under protest." In closing arguments, defense counsel urged the jury to find Slane not guilty of all charges.

The jury convicted Slane as charged. The court imposed no further confinement, suspending the remainder of the sentence upon 24 months of probation. As a condition of probation, the court required Slane to undergo a mental health evaluation and follow treatment recommendations. Slane appeals.

II

The Fourteenth Amendment right to due process and the Sixth Amendment right to a trial by jury, taken together, entitle a criminal defendant to a jury determination of guilt beyond a reasonable doubt as to every element of the charged crime. Apprendi v. New Jersey, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); U.S. CONST. amends. VI, XIV; WASH. CONST. art. I, §§ 3, 22. In this case, for the jury to convict Slane of malicious mischief in the second degree, the State was required to prove beyond a reasonable doubt that Slane (1) knowingly and maliciously (2) caused physical damage to the property

5

of another in an amount exceeding seven hundred and fifty dollars. RCW 9A.48.080(1)(a). To find Slane guilty of malicious mischief in the third degree, the jury had to find beyond a reasonable doubt that Slane (1) knowingly and maliciously (2) caused physical damage to the property of another, "under circumstances not amounting to malicious mischief in the first or second degree." RCW 9A.48.090(1)(a). "Malice" means "an evil intent, wish, or design to vex, annoy, or injure another person" and may be inferred from an act done in willful disregard of another's rights or an act wrongfully done without just cause or excuse. RCW 9A.04.110(12). Finally, to convict Slane of bail jumping, the State was required to establish beyond a reasonable doubt that Slane (1) was "released by court order or admitted to bail with knowledge of the requirement of a subsequent personal appearance before any court of this state" and (2) he failed to appear as required. RCW 9A.76.170(1).

Slane claims that defense counsel "conceded that he committed all of the acts underlying the malicious mischief and bail jumping charges" and thereby violated his constitutional right to require the jury to find each element of the charged crimes beyond a reasonable doubt. In support of this argument, Slane cites State v. Humphries, 181 Wn.2d 708, 336 P.3d 1121 (2014).

The State charged Humphries, among other crimes, with unlawful possession of a firearm based on prior robbery convictions that rendered him ineligible to possess a firearm. Humphries, 181 Wn.2d at 712. Defense counsel wanted to stipulate that Humphries had a previous conviction for a "serious offense" so the jury would not learn of the specific nature of the prior convictions.

Humphries, 181 Wn.2d at 712. Although counsel informed the trial court that Humphries did not agree with the proposed stipulation, the court determined that the decision was tactical and the defendant's consent was not required. The court allowed counsel to stipulate to the prior offense element of the crime on his client's behalf, over his objection. Humphries, 181 Wn.2d at 712.

Reversing Humphries' firearm conviction and this court's decision, our Supreme Court held that counsel's stipulation to an element of the crime over the defendant's personal objection amounted to an involuntary waiver of his constitutional right to due process. Humphries, 181 Wn.2d at 718. This was so because "[w]hen the parties stipulate to the facts that establish an element of the charged crime, the jury need not find the existence of that element, and the stipulation therefore constitutes a waiver of the 'right to a jury trial on that element,' as well as the right to require the State prove that element beyond a reasonable doubt." Humphries, 181 Wn.2d at 714 (citation omitted).

Slane contends that by allowing counsel to proceed with a mental health defense after he voiced objections, the court impermissibly permitted counsel to stipulate to an element of the offense over his explicit objection, as in Humphries. However, Slane's reliance on Humphries is misplaced. As the State correctly points out, there are legally significant differences between Slane's attorneys' arguments to the jury in this case and entry of a formal stipulation to an element of the crime. The primary distinction being that a stipulation relieves the State of its burden of proof as to the element to which the parties stipulate. Here, on the other hand, the defense argument had no effect on the State's burden to present

7

evidence or its burden of proof. The instructions informed the jury that Slane's plea of not guilty put "in issue every element of each crime charged" and that the State bore the "burden of proving each element of each crime beyond a reasonable doubt."

While Slane's attorneys focused only on challenging the State's claim that Slane acted "knowingly and maliciously" and demonstrating that his mental health condition prevented him from appearing in court, the jury was nevertheless specifically instructed that Slane could only be convicted upon proof beyond a reasonable doubt that he "caused physical damage to the property" of the victims and that he "failed to appear before a court" on July 15, 2013. The jury was also instructed that the lawyers' arguments could not be considered as "evidence" and were merely intended to assist the jury to "understand the evidence and apply the law." As the court specifically noted in Humphries, unlike a formal stipulation, "an attorney's concession during closing argument does not waive any of the defendant's relevant constitutional rights. The State is still required to bear its burden, present admissible evidence, and convince a jury of every element of the crime beyond a reasonable doubt." Humphries, 181 Wn.2d at 717 n.4.

III

Slane also contends that his attorneys abandoned him by asserting a mental health defense over his objection and thereby violated his constitutional right to counsel. Slane claims that counsel presented evidence that was beneficial to the State's case, and that by conceding his actions, counsel failed to

subject the State's case to meaningful adversarial testing. Therefore, he argues that this is a case where we must presume ineffective assistance.

To safeguard the fundamental right to a fair trial, a criminal defendant is entitled to the effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We presume that counsel is effective, and the appellant bears the burden of proving otherwise. Strickland, 466 U.S. at 689. Under Strickland, the benchmark for evaluating a claim of ineffectiveness is whether the attorney's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. Strickland set forth a two-part, performance-and-prejudice test whereby the appellant must show that counsel's representation fell below an objective standard of reasonableness, and there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 688, 694. Both deficient performance and prejudice are required before the court may conclude that a conviction "resulted from a breakdown in the adversary process that render[ed] the result [of the proceeding] unreliable" and in violation of the Sixth Amendment. Strickland, 466 U.S. at 687.

Although Strickland's test generally governs, ineffective assistance may be presumed in limited circumstances under United States v. Cronic, 466 U.S. 648, 650, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). In Cronic, the companion case to Strickland, the Court identified three distinct situations in which such a presumption is appropriate: (1) when the defendant is completely denied

counsel "at a critical stage of his trial," (2) when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," and (3) when, although counsel is available to assist, "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." Cronic, 466 U.S. at 659-60.

As an initial matter, Slane characterizes his objection to the strategy his lawyers pursued as clear and consistent throughout the proceedings. But in fact, the record is somewhat ambiguous as to the nature of Slane's objection and whether he abandoned it. Slane claimed for the first time during opening remarks that he did "not want this defense" as his attorney discussed his mental health status in connection with the malicious mischief charges. But he did not raise the issue again after opening statements or at any other point. He did not seek the appointment of new counsel, nor raise any issue with the court about a conflict with his attorneys. When one of Slane's attorneys expressed concerns about competency the day after opening statements, she said her concerns were based on Slane's inability to engage with counsel, but said she did not believe that his disengagement stemmed from a disagreement or conflict. The court's colloquy with Slane at this point included some discussion about the defense strategy. Slane's answers reflected that he understood the defense, but he did not reiterate any objection or opposition. Slane did not object to the testimony of any of the defense witnesses nor to the jury instruction on the affirmative defense of uncontrollable circumstances. And while Slane strenuously voiced his

10

dissatisfaction with trial counsel at the conclusion of the case, this appeared to be based on his view that the defense prematurely rested its case.

Nevertheless, even if we assume that Slane opposed the assertion of a mental health defense with respect to both the malicious mischief and bail jumping charges and that his objection was not fleeting, his argument hinges on the notion that the client must agree, not only with the objective, but also with the means to pursue that objective. This is incorrect.

It is a cardinal rule of attorney-client relations that "a lawyer shall abide by a client's decisions concerning the objectives of representation and . . . shall consult with the client as to the means by which they are to be pursued." Rules of Professional Conduct (RPC) 1.2(a). In the criminal context, certain decisions must ultimately rest with the defendant after consultation with the lawyer, including what plea to enter, whether to waive a jury trial, whether to testify, and whether to appeal. ABA CRIMINAL JUSTICE STANDARDS FOR THE DEFENSE FUNCTION std. 4–5.2 (4th ed. 2015); RPC 1.2(a). "An attorney undoubtedly has a duty to consult with the client regarding important decisions, including questions of overarching defense strategy. That obligation, however, does not require counsel to obtain the defendant's consent to every tactical decision." Florida v. Nixon, 543 U.S. 175, 187, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004) (internal quotation marks and citation omitted). In general, counsel, not the client, "'is in charge of the choice of trial tactics and the theory of defense.'" In re Personal Restraint of Stenson, 142 Wn.2d 710, 734, 16 P.3d 1 (2001) (quoting United States v. Wadsworth, 830 F.2d 1500, 1509 (9th Cir. 1987)). "The adversary

process could not function effectively if every tactical decision required client approval." Taylor v. Illinois, 484 U.S. 400, 418, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988).

While the constitutional right to effective assistance of counsel places an outer limit on the attorney's decision-making power, Strickland does not define the Sixth Amendment right to counsel in terms of the defendant's right to control the defense. Stenson, 142 Wn.2d at 733 (decision to admit guilt in penalty phase of capital trial over the objection of the accused fell within the province of counsel to determine matters of strategy); see also State v. Cross, 156 Wn.2d 580, 605-06, 132 P.3d 80 (2006) (decision to present evidence about the accused's mental health at sentencing, over his objection, properly rested with defense counsel). And again, only a tactical decision not "to subject the prosecution's case to meaningful adversarial testing" constitutes "a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." Cronic, 466 U.S. at 659.

Slane pleaded not guilty to the crimes and therefore, the objective of the representation was to have the jury find him not guilty. Slane's attorneys mounted a defense consistent with that objective.[4] Slane does not suggest that counsel failed to consult with him about the means to achieve that objective. Nor

---

[4] In contrast, in several cases Slane relies on from other jurisdictions, the attorneys' conduct conflicted with the defendant's objective in entering a not guilty plea. For instance, in Cooke v. State 977 A.2d 803 (Del. 2009), the pleas available in Delaware were guilty, not guilty, nolo contendere, or guilty but mentally ill. Cooke, 977 A.2d at 842. Although Cooke chose to plead not guilty, rather than guilty but mentally ill, his attorneys infringed upon his right to enter the plea of his choice by asking the jury to find him guilty but mentally ill. Cooke, 977 A.2d at 842-43; see also State v. Carter, 270 Kan. 426, 440, 14 P.3d 1138 (2000) (by urging jury to convict on felony murder count to avoid conviction of premeditated murder, "defense counsel was betraying the defendant by deliberately overriding his plea of not guilty").

did the strategic decision of counsel not to challenge certain facts fail to subject the State's case to adversarial testing.

The United States Supreme Court's decision in Florida v. Nixon is instructive. Nixon was on trial for capital murder. Nixon, 543 U.S. at 180. Given Nixon's confession and "overwhelming evidence" of his guilt, Nixon's attorney determined that the only way to avoid a death sentence was to concede guilt and focus on the penalty phase. Nixon, 543 U.S. at 180, 181. Trial counsel attempted to explain this strategy to Nixon and secure his consent, but Nixon was uncooperative and eventually removed from the courtroom. Nixon, 543 U.S. at 181-82. The Florida Supreme Court vacated Nixon's conviction and sentence after finding trial counsel ineffective for conceding guilt without the defendant's express consent. Nixon, 543 U.S. at 186-87. The court presumed prejudice under Cronic because it found that the concession "allowed the prosecution's guilt-phase case to proceed essentially without opposition" and left the prosecution's case unexposed to "meaningful adversarial testing." Nixon, 543 U.S. at 185.

The United States Supreme Court disagreed. Acknowledging that criminal defendants must consent to guilty pleas, the Court determined that the concession to murder was not the "functional equivalent" of a guilty plea. Nixon, 543 U.S. at 187-88. "Nixon retained the rights accorded a defendant in a criminal trial. . . . The State was obliged to present during the guilt phase competent, admissible evidence." Nixon, 543 U.S. at 188. Trial counsel did not cede the case; he cross-examined witnesses and attempted to exclude prejudicial

evidence. Nixon, 543 U.S. at 188. Nixon's express consent to the concession strategy was not required. Nixon, 543 U.S. at 189. Furthermore, the Court held that "if counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the Strickland standard, that is the end of the matter." Nixon, 543 U.S. at 192.

The defense strategy in this case, while unsuccessful, was sound. Slane argues that the defense evidence, such as the testimony about his nonsensical explanation for why he damaged the vehicles, merely corroborated his guilt and benefitted the State. Slane's argument fails to appreciate that the defense evidence also undermined the State's assertion that he possessed the requisite intent and supported the claim of uncontrollable circumstances. The argument also ignores the strength of the evidence indicating that Slane caused the damage in question and failed to appear in court. He was found hiding in the vicinity of the damaged cars around the time of the incident. He was wearing clothes matching the description provided by an eyewitness and depicted in surveillance video. He had knives in his possession. The knives were consistent with puncture marks on the tires and there were indications they had recently been used to cut rubber. The State also presented the testimony of a records custodian to establish that Slane had been charged with a felony, had been released, and failed to appear at a required court hearing.

While even conceding a client's guilt may be an appropriate trial strategy in some cases, Slane's counsel did not pursue a strategy of conceding guilt that was inconsistent with his plea of not guilty. It is reasonable to assume that

acknowledging Slane's conduct lent credibility to the defense argument that Slane's mental health symptoms rendered him unable to form malicious intent or appear in court as required. See Nixon, 543 U.S. at 192 ("[C]ounsel cannot be deemed ineffective for attempting to impress the jury with his candor and his unwillingness to engage in a useless charade." (internal quotation marks omitted)); see also United States v. Thomas, 417 F.3d 1053, 1056-59 (9th Cir. 2005) (no prejudice where attorney conceded participation in one robbery where defendant was "in effect, caught red-handed" but contested the remaining charges which carried significantly greater penalties). In the face of significant evidence establishing Slane's conduct, it was reasonable for counsel to focus on the mens rea element and affirmative defense rather than challenging facts that were not readily disputable.

In sum, counsels' decision to acknowledge Slane's actions did not amount to an involuntary waiver of a constitutional right nor violate Slane's constitutional right to due process. And here, where defense counsel pursued a reasoned trial strategy in light of the evidence available and did not override his choice of plea, Slane fails to establish a violation of his constitutional right to the effective assistance of counsel.

Affirmed.

We concur: