NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Respondent,*

*v.*

TRAVIS RICCI, *Petitioner.*

No. 1 CA-CR 24-0686 PRPC

FILED 10-21-2025

Petition for Review from the Superior Court in Maricopa County
No. CR2011-005961-001
The Honorable Dean M. Fink, Judge

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Philip D. Garrow
*Counsel for Respondent*

Brown & Little PLC, Chandler
By Matthew O. Brown
*Counsel for Petitioner*

## MEMORANDUM DECISION

Vice Chief Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Cynthia J. Bailey joined.

**W E I N Z W E I G**, Vice Chief Judge:

¶1        Travis Ricci petitions this court for review from the dismissal of his petition for post-conviction relief under Arizona Rule of Criminal Procedure 32. We grant review but deny relief.

### FACTS AND PROCEDURAL BACKGROUND

¶2        Ricci was a member of the Vinlanders Social Club, a white supremacist group, in October 2009 when he approached a mixed-race couple, John and Karen[1], in the Palma Park. Ricci hurled racial slurs at John, yelled "this is white power," and the couple walked away. A passerby saw Ricci harassing the couple from behind and described him as a shirtless man with tattoos.

¶3        Around 45 minutes later, Ricci gunned down the couple as a passenger in a car. Karen was hit and died. John described the shooter as the same man who confronted them earlier. He described the man's face and stomach tattoo, leading to a composite sketch that closely resembled Ricci. John later failed to identify Ricci in a photo lineup. The State charged Ricci with first degree murder and other crimes, and sought the death penalty.

¶4        A jury trial was held. Ricci's fellow gang members testified for the prosecution, including several who entered testimonial plea agreements or received money for their cooperation. They described the night of the murder. Ricci was at a party near the murder. He left the party for a period, was seen "yelling at someone" outside, and then returned all "worked up" about how a black man was treating a white woman. A few minutes later, Ricci left the party for a second time, but this time in a car with two Vinlanders, Aaron Schmidt and Ryan Maltba.

---

[1]        We use pseudonyms to protect the victims' identities. Ariz. R. Sup. Ct. 111(i).

**¶5** Schmidt was charged as a co-defendant here and pled guilty to second degree murder, attempted first degree murder and assisting a criminal street gang. He testified he owned the shotgun used in the shooting and drove the car when Ricci fired at the victims. His wife testified she buried the weapon.

**¶6** Maltba pled guilty to a weapons charge resulting from the investigation of this case, and he received substantial funds from law enforcement. He testified he buried the shotgun shells.

**¶7** In his closing argument, defense counsel conceded Ricci was the person who initially confronted the victims but disputed he was the shooter:

> Now, we know Travis Ricci did start an argument at Palma Park. We know he did. And he, that night ten years ago, had a big mouth. And he should not have opened his mouth. He was insulting. It was degrading. And it was none of his business. But that doesn't mean we have any idea what happened when they got home, when he got home. And everybody is so secretive about it. Nobody has the same story.

**¶8** Jurors did not buy that argument. They convicted Ricci of first degree murder, attempted first degree murder, conspiracy to commit first degree murder, aggravated assault, two counts of drive by shooting, assisting in a criminal street gang and misconduct involving weapons. The jury recommended Ricci spend the rest of his life in prison. This court affirmed the convictions and sentences on direct appeal. *State v. Ricci*, 1 CA-CR 19-0194, 2021 WL 1149681, at *7, ¶ 40 (Ariz. App. Mar. 25, 2021) (mem. decision).

**¶9** Ricci petitioned the superior court for post-conviction relief. He argued his trial attorney provided ineffective assistance by conceding in the closing argument that Ricci was the person who confronted the victims before the shooting. The superior court summarily denied Ricci's petition. We grant review. *See* A.R.S. § 13-4239; Ariz. R. Crim. P. 32.16.

## DISCUSSION

**¶10** We review the superior court's denial of post-conviction relief for abuse of discretion. *State v. Bigger*, 251 Ariz. 402, 407, ¶ 6 (2021).

**¶11** Ricci argues his attorney's concession qualified as ineffective assistance because that concession gutted his identity defense. In support,

Ricci provided an affidavit from a juror who claimed to be "the final holdout on a guilty verdict." According to the affidavit, the juror was "shocked" when defense counsel conceded Ricci started the fight with John and Karen at the park. The juror said he would have viewed the case differently without that concession, and that even the jury foreperson said, "we would be having a very different conversation" without the concession.

¶12 To establish an ineffective assistance of counsel claim, a defendant must show that counsel's conduct fell below an objective standard of reasonableness and prejudiced the defendant. *Id.* at 407, ¶ 8 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). A strategic decision by counsel generally will not support an ineffective assistance claim unless the decision has no "reasoned basis." *State v. Gerlaugh*, 144 Ariz. 449, 455 (1985).

¶13 The superior court appropriately denied Ricci's petition. Defense counsel reasonably focused the jury on the weakest element of the prosecution—who fired the weapon? *See United States v. Thomas*, 417 F.3d 1053, 1058–59 (9th Cir. 2005) (explaining it can be advantageous for counsel to concede elements of charges with strong evidence of defendant's guilt in order to focus on charges for which defendant has a better shot). The jury heard stronger evidence that Ricci was the person who confronted the victims in the park than the evidence he was the shooter. He was alone at the park and disinterested witnesses fingered him as the culprit. The two gang members in the car had extensive criminal records and were motivated to finger Ricci as the culprit (lesser charges and money). Defense counsel was not unreasonable to focus the jury on the weakest element of the prosecution—whether Ricci held the gun that killed Karen.

¶14 What is more, concession is an effective rhetorical device because it gains credibility and the jury's trust, important considerations for defense counsel of a defendant facing the death penalty. *See Florida v. Nixon*, 543 U.S. 175, 190–91 (2004) (observing, in a case where defense counsel conceded defendant committed murder in a calculated strategy to avoid a death sentence, that "the gravity of the potential sentence in a capital trial and the proceeding's two-phase structure vitally affect counsel's strategic calculus" and "[a]ttorneys representing capital defendants face daunting challenges in developing trial strategies").

¶15 Ricci does not argue or offer evidence his attorney failed to discuss the concession strategy with him. *Cf. Thomas*, 417 F.3d at 1056 (assuming, based on *Nixon*, 543 U.S. at 187, that counsel performed

deficiently by conceding defendant's guilt on one charge without consulting him).

**¶16**       Because counsel acted reasonably under the circumstances, we do not address prejudice. *See State v. Bennett*, 213 Ariz. 562, 567, ¶ 21 (2006).

## CONCLUSION

**¶17**       We grant review and deny relief.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR